(No. 41117.—

THE CITY OF CHICAGO, Appellee, *vs.* KARL MEYER, Appellant.

*Opinion filed November 26, 1969.*

PAUL E. GOLDSTEIN and MARSHALL PATNER, of Chicago, for appellant.

RAYMOND F. SIMON, Corporation Counsel, of Chicago, (MARVIN E. ASPEN and JOHN J. GEORGE, Assistants Corporation Counsel, of counsel,) for appellee.

Mr. JUSTICE KLUCZYNSKI delivered the opinion of the court:

Karl Meyer appeals from a conviction of disorderly conduct and interfering with an officer in the discharge of his duties under chapters 193—1 and 11—33, respectively, of the Municipal Code of Chicago. He was find $200 on the first charge and $100 on the second charge. A constitutional question gives us jurisdiction.

At his trial defendant, who had funds to retain counsel, chose to represent himself, refused appointed counsel, waived a jury and cross-examination of the City's witnesses and put in his own defense. He testified that he wanted to "communicate to the public in Chicago some ideas about the Viet Nam war." He first selected as his site for his "Viet Nam Forum" a school yard located in an area known as "Old Town". However, the Chicago Board of Education denied his request to use the school yard on every Friday and Saturday evening in July and August because the light was inadequate and the yard was intended for playground purposes. When defendant and his associates arrived at the school yard on June 30 an attorney from the school board informed them that they could not use the school yard. They then moved their table, literature and banners on to the sidewalk. A police officer told them they could not erect a table and chairs on the sidewalk. Defendant testified: "So we

took down the tables and chairs and proceeded to speak there, and we held the forum that night. And there wasn't any trouble, and there were a lot of officers protecting us and watching and keeping the sidewalk clear. And we held the forum on subsequent nights—July 1st and then the next weekend—Friday and Saturday of the next weekend. In each case there were police officers there and there was no disturbance, and we held the forum." In describing the meeting defendant said, "A lot of people spoke and a lot of people—it's an open forum and we let anyone speak that wanted to speak".

There is no dispute as to the events preceding defendant's arrest on July 14, 1967. About 8:45 P.M. he stood on a 5-gallon can and began his talk. There was a large sign behind him and there was a shopping cart filled with pamphlets next to him. Four or five of his associates also spoke and distributed the pamphlets. A crowd of 100 to 200 persons gathered. The sidewalk was obstructed and pedestrians walked into the street to get around the crowd. About 11:00 P.M. the gathering had become loud and boisterous. Several servicemen in uniform argued with defendant and his friends about the policy in Viet Nam. One of defendant's associates reported a fight in the crowd to officer O'Malley. Two spectators tore down the sign and a person sympathetic to defendant picked it up. A fight was about to ensue over this incident when officer O'Malley appeared and calmed the situation. Some spectators then set fire to some leaflets. The plain-clothed officers finally dispersed the crowd and officer Highland instructed defendant to move also. Defendant got back on the can and said: "I will not move. You can arrest me if you please." When told he was under arrest, defendant walked to the squad car without protest or incident.

Officer O'Malley testified he had witnessed about 500 demonstrations in the past two years and that in this demonstration the audience, in his opinion, had become agitated.

Defendant admitted that the situation had become tense but he was willing to be attacked for the purpose of his cause.

Defendant argues that both ordinances are unconstitutional on their face because they are vague and prohibit conduct protected by the first amendment. This same challenge was leveled at this disorderly conduct ordinance in *City of Chicago* v. *Gregory,* 39 Ill.2d 47, and at this "resisting or interfering" ordinance in *City of Chicago* v. *Lawrence,* 42 Ill.2d 461, and we rejected the challenge in each case.

He then argues that neither ordinance can constitutionally be applied to his conduct. The issue he raises is whether the police can prevent him from speaking simply because his audience might react with disorder or violence. This issue, in the context of a demonstration, was raised in *Gregory.* After reviewing and analyzing several Supreme Court decisions, we concluded that the police may not "\* \* \* stop a peaceful demonstration merely because a hostile crowd may not agree with the views of the demonstrators. It is only where there is an imminent threat of violence, the police have made all reasonable efforts to protect the demonstrators, the police have requested that the demonstration be stopped and explained the request, if there be time, and there is a refusal of the police request, that an arrest for an otherwise lawful demonstration may be made." (39 Ill.2d 47, 60.) Applying this rationale to the facts of the *Gregory* case we upheld the disorderly conduct convictions.

The Supreme Court reversed these convictions. (*Gregory* v. *City of Chicago,* 394 U.S. 111, 22 L. Ed. 2d 134, 89 S. Ct. 946.) That court observed that a peaceful and orderly march falls within the sphere of conduct protected by the first amendment. It then noted, as did we, that there was no evidence that the march was disorderly. It then concluded, as did we, that the disorderly conduct convictions

could not be based on the manner in which the march was conducted.

The court next properly observed that our opinion held the demonstrators "were convicted not for the manner in which they conducted their march but rather for their refusal to disperse when requested to do so by Chicago police." However, because "The trial judge charged solely in terms of the Chicago ordinance" and "Neither the ordinance nor the charge defined disorderly conduct as the refusal to obey a police order" the court concluded that "* * * petitioners were charged and convicted for holding a demonstration not for refusal to obey a police officer." 394 U.S. 111, 947, 22 L. Ed. 2d 134, 136, 89 S. Ct. 946.

The Supreme Court neither approved nor disapproved of our conclusion that the police may order the cessation of otherwise lawful conduct where they have made all reasonable efforts to maintain order, but the conduct is producing an imminent threat of uncontrollable violence or riot. We adhere to the view expressed in our *Gregory* opinion that they may make such an order and that the demonstrators or speakers may be arrested and prosecuted for failure to obey such order.

The interfering ordinance provides that "Any person who shall resist any officer of the police department in the discharge of his duties, or shall in any way interfere with or hinder or prevent him from discharging his duty as such officer * * * shall be fined not less than Ten nor more than One Hundred Dollars for each offense." The police officers on duty during this "Viet Nam Forum" had a duty both to maintain order and to safeguard first-amendment freedoms. As Justice Black observed, however, "* * * when groups with diametrically opposed, deep-seated views are permitted to air their emotional grievances, side by side, on city streets, tranquility and order cannot be maintained even by the joint efforts of the finest and best officers and of those who desire to be the most law-abiding

protestors of their grievances." *People* v. *Gregory*, 394 U.S. 111, 89 S. Ct. 946, 950, 22 L. Ed. 2d 134, 139 (concurring opinion).

The record shows that defendant held his "forum" on several weekends and that the police officers were able to maintain order and to protect the right of defendant and his associates to express their views. The record also shows that on July 14, 1967, there was some violence and a threat of greater violence, that the police had tried to maintain order, and that they ordered the crowd to disperse only after the debate was degenerating to one of physical battle. Defendant was arrested when he wilfully refused to obey the order to disperse and attempted to continue the conduct which was producing the disorder. We hold that defendant was properly convicted of interfering with the police in the discharge of their duty to maintain order.

The conviction for disorderly conduct is subject to the same criticism the Supreme Court made in *Gregory*. The record indicates to us that defendant was charged and convicted of disorderly conduct because of the manner in which he conducted his "forum".

For the foregoing reasons, the conviction for interfering with the police in the discharge of their duty is affirmed and the conviction for disorderly conduct is reversed.

*Affirmed in part and reversed in part.*