NATIONWIDE ADVERTISING SERVICE, INC., Plaintiff-Appellant, *v.* MARTIN J. KOLAR *et al.*; Defendants-Appellees.

(No. 58790;

First District (3rd Division)—September 20, 1973.

A. S. Frankenstein and R. R. Frankenstein, both of Chicago, for appellant.

Robert E. Pfaff and Nicholas D. Charrja, both of Chicago, (Jenner & Block, of counsel,) for appellees.

Mr. JUSTICE McGLOON delivered the opinion of the court:

This is an action to enforce an employee's covenant not to compete with his employer. The plaintiff instituted this action to enjoin the defendant, Martin J. Kolar, a former employee of the plaintiff, and defendant, Bentley, Barnes & Lynn, Inc., Kolar's present employer, from soliciting or accepting business relating to recruitment advertising for personnel from certain of plaintiff's past customers. After hearing evidence, the trial judge denied plaintiff's motion for a temporary injunction. In this appeal the plaintiff contends (1) that the trial judge erred in not recognizing that the plaintiff's interest in its customers is a legitimate interest which reasonably requires the protection of a restraint on former employees, and (2) that the restrictive covenant that is the subject of this suit is reasonable in scope.

We affirm.

The plaintiff, an Ohio corporation registered to do business in Illinois, is engaged in the business of solicitation and placement of recruitment advertising for personnel. Basically, this service consists of composing and placing in local newspapers advertisements for jobs or positions available in private industry. In December, 1969, defendant Kolar entered into the employment of the plaintiff at its Chicago office. Shortly thereafter Kolar signed an employment contract, dated January 12,

1970, which contained the restrictive covenant that is the subject of this action. The contract identified the parties, established that Kolar's services were to be performed in Chicago, the amount of his salary and that the term of his employment was to be indefinite. It then provided:

"6. Employee acknowledges the following:

(a) That Nationwide's business is based largely on information recorded on various customers lists and statistical data, and other records acquired, collected and classified as the result of substantial outlay in establishing its business in various places in the United States, including the city of Chicago, State of Illinois;

(b) That the trade and good will of Nationwide in said place and vicinity with its customers has been established at substantial cost and effort, and that irreparable damage will result Nationwide if such lists, records or information are obtained or used by any other person or competitor of Nationwide, or if said good will is diverted from Nationwide;

(c) That the giving of such employment affords Employee opportunity of favorable relations with Nationwide's customers and access to such confidential lists, records, and information concerning Nationwide's business in consideration thereof;

Employee therefore separately and specifically covenants that for one year after his employment with the company ceases he will not directly or indirectly solicit, circularize or aid in soliciting or circularizing (generally or specifically) any business relating to solicitation or placement of recruitment advertising for personnel from any customer or customers and will not deal with or make sales regarding solicitation or replacement of recruitment advertising for personnel to any customers who have within one year prior to the cessation of his employment been customers of Nationwide at its office located at the aforesaid place."

Kolar remained in the plaintiff's employ, eventually becoming the regional manager of the Chicago office, until January 1, 1973, at which time he resigned. In the same month, Kolar became associated with the defendant, Bentley, Barnes & Lynn as a commissioned salesman of recruitment advertising. It is undisputed that the defendant Bentley, Barnes & Lynn is also engaged in the recruitment advertising business in Chicago and is a competitor of the plaintiff.

Shortly after joining Bentley, Barnes & Lynn, Kolar solicited a number of business firms which had been customers of the plaintiff's Chicago

office in the year prior to January 1, 1973. Kolar solicited those firms for sales of recruitment advertising on behalf of his new employer.

On January 17, 1973, the plaintiff filed a suit for an injunction against Kolar in order to prevent him from soliciting any business relating to recruitment advertising for personnel from any firm that, within one year prior to January 1, 1973, had done business with the plaintiff and to prevent him from disclosing the names of plaintiff's customers to any of plaintiff's competitors. The plaintiff also sought to enjoin the defendant Bentley, Barnes & Lynn from employing Kolar for this purpose for one year.

At the hearing on plaintiff's motion for a temporary injunction, the plaintiff presented, through its witnesses, the facts that are set out above. In their defense the defendants presented certain witnesses, among which the most important was Lehman M. Brauer. Brauer testified that he was the vice president of Worldwide Agency, a firm also engaged in the business of recruitment advertising for personnel, and a direct competitor of both the plaintiff, Nationwide Advertising, and the defendant, Bentley, Barnes & Lynn. He further testified as to the nature of the recruitment advertising business and estimated that there were well over fifteen such firms in the Chicago area. Brauer had been associated with Worldwide for over five years and had been the regional vice president for the Chicago area. Brauer explained that in the recruitment advertising business there was no secret as to which of the various firms in the area were placing advertising for a certain customer. He stated that there were various ways that this information could be ascertained; the newspaper which carried the ads would tell an interested party which advertising firm was placing a particular advertisement, or a competitor could simply call a customer and inquire who was doing their recruitment advertising. He further stated that the appearance of an ad itself often times indicated which advertising firm had placed it as many firms had their own specific style that was not commonly used by others. In short, he agreed that it was "pretty general knowledge as to who your competitor is doing business with." He further testified to the nature of the customer relationship in the industry. He stated that in a normal year about 20 to 25 per cent of his business was not business he had the preceding year. One of the reasons for this is that the individual employee of a customer company who is responsible for the placing of that company's recruitment advertising will leave his present employer and find similar employment with a new company. In that situation the employee would contact the same advertising agency on behalf of his new employer and the advertising agency would lose the individual's old em-

ployer as a customer. A fair characterization of Brauer's testimony would be that as a general rule an advertising agency's relationship with its customers is transitory and not permanent.

On the basis of all the evidence adduced during the hearing, the trial judge denied the plaintiff's motion for a temporary injunction finding that the plaintiff did not have such a proprietary interest in its customers as would reasonably warrant the protection of restraining a former employee from competing with it. In this appeal the plaintiff argues that the trial judge erred in that finding because Illinois courts have long recognized that an employer, such as the plaintiff, has a legitimate interest in its customers that is subject to protection by the enforcement of an employee's covenant not to compete. We disagree because we find that the cases cited by the plaintiff in which covenants not to compete have been enforced are not analogous to the situation in the instant case.

In *Smithereen Co. v. Renfroe* (1945), 325 Ill.App. 229, 59 N.E.2d 545, relied upon by the plaintiff, the court found that the covenant not to compete should be enforced. That case, however, differs substantially from the instant case because the court decision was based, at least in part, on the fact that the former employee had acquired certain confidential information that he had attempted to use for his own benefit. The court stated:

> "The defendant's position as branch manager of the north side branch of the plaintiff and the fact that he had previously worked out of other offices of the plaintiff, together with his having acquired knowledge of the methods and processes used by the plaintiff, gave the defendant confidential information that should not have been divulged to others or used for his own benefit." (325 Ill.App. 229, 242.)

There was no evidence submitted in the instant case that the defendant acquired confidential information during his employment by the plaintiff. The assertion by the plaintiff that the identity of its customers was confidential information was contradicted by the testimony of Brauer.

In *House of Vision, Inc. v. Hiyane* (1967), 37 Ill.2d 32, 225 N.E.2d 21, also relied upon by the plaintiff, the Supreme Court reversed the decree entered by the circuit court and dismissed the employer's complaint which sought to enjoin a former employee. Despite the unfavorable decision in that case, the plaintiff contends that the court recognized that an employer had a protectable interest in its customers. The court said: "When a business is sold, restraints may be imposed to protect the value of the good will transferred, [citation] and where

specialized knowledge, such as secret processes or the like are involved, restraints may protect against competition resulting from disclosure or appropriation." (37 Ill.2d 32, 37-38.) Again, this case is distinguishable from the instant case because there was no proof submitted in our case to support the allegation that Kolar acquired any confidential information while employed by the plaintiff.

The plaintiff also cites two Illinois Supreme Court cases, *Cockerill v. Wilson* (1972), 51 Ill.2d 179, 281 N.E.2d 648, and *Canfield v. Spear* (1969), 44 Ill.2d 49, 254 N.E.2d 433, which he contends establish the proposition that an employer's interest in its customers is protectable by the enforcement of covenants not to compete. Those cases did enforce employee covenants not to compete and did recognize the protectable interest of an employer in his customers. However, the nature of the employer's business in those two cases was so substantially different from the nature of the personnel advertising business that the holdings in those cases cannot be dispositive of the instant case.

In *Cockerill* the plaintiff and defendant were doctors of veterinary medicine who had formed an association to practice in the Rushville, Illinois, area. The plaintiff, an established veterinarian, employed the younger defendant and guaranteed him an annual salary. In return the defendant covenanted that if he left his association with the plaintiff he would not practice for five years within a radius of 30 miles of Rushville. Shortly thereafter their association was ended and the plaintiff instituted a suit to enjoin the defendant from violating the restrictive covenant he had signed. In affirming the injunction preventing the defendant from violating the agreement, the court found that the defendant had been a stranger to the Rushville area prior to his employment with the plaintiff, and that his association with the plaintiff thereby brought him into contact with clients in the Rushville area which the plaintiff had established over a period of years. The court concluded that the plaintiff had a legitimate interest in protecting his clientele from being taken over by the defendant as a result of these contacts afforded by association with the plaintiff.

In *Canfield* a similar situation is presented. There a group of medical doctors practicing in Rockford, Illinois, agreed to accept a dermatologist into their association in return for his promise not to practice medicine for three years in the Rockford area if he should terminate his association with the clinic. The defendant subsequently resigned and opened an office in Rockford, and the plaintiffs sued to enforce the covenant. In affirming the enforcement of the covenant the court again pointed out that the defendant had never lived in Rockford prior to joining the association and brought no clients with him. The court further found

that "it was doubtless through the opportunities provided by this association that he became known in the city.". 44 Ill.2d 49, 52. .

The factual situations in these two cases, which justified the enforcement of the restrictive covenants, are different from the factual situation in the instant case in some essential aspects. In both *Cockerill* and *Canfield* the defendants were brought into contact with clients upon which the plaintiffs in those cases had spent considerable time and effort to attract. The defendants, newcomers to the area of their practice, had contact with clients because of their association with the longer established plaintiffs. The very nature of the professions in which those plaintiffs were engaged indicates that they could justifiably anticipate a permanent or near-permanent relationship with their clientele. The defendants undoubtedly would never have had contact with these clients had it not been for their association with the plaintiffs. This is quite different from the nature of the customer contact in the personnel advertising business as it was described by Brauer.

■■ In regard to the nature of the interest that the plaintiff had in its customers, the instant case is more similar to *United Travel Service, Inc. v. Weber* (1969), 108 Ill.App.2d 353, 247 N.E.2d 801, than to *Cockerill* or *Canfield*. In *United Travel Service* the court refused to enjoin the defendant from competing with her former employer in the travel agency business. There was evidence that the defendant, in her new business, had solicited at least one of the clients of her former employer. However, the court stated:

> "In our review of this record, we find no indication of customer contact that would indicate that the defendant had such dominion over the customers as to cause them to automatically move their travel-agency business from United to Europa. This record does not demonstrate the existence of any trade secrets, the property of United, that were imparted by it to the defendant. Indeed, there is no suggestion that United's travel-agency business was in substance or in procedure different from that of travel agencies generally. That which the defendant learned from United could be learned at other times and other places. We find no indication of secrets of the particular employer as distinguished from the general rule. The covenant thus becomes one whose purpose appears to prevent competition per se." 247 N.E. 2d 801, 803.

■■ In *House of Vision, Inc. v. Hiyane* (1967), 37 Ill.2d 32, 225 N.E.2d 21, the court held the restrictive covenant unenforceable where its sole purpose was to create a proprietary interest in plaintiff's clientele. (See also *Professional Business Management, Inc. v. Clark* (1967), 83 Ill.App.

2d 236, 227 N.E.2d 371.) The court further held that the identity and location of the clientele in that case were not a matter in which the plaintiff had a proprietary interest, and the same is true in the instant case.

We find that the record before us does not demonstrate that the plaintiff had a protectable business interest in its customers that required the restraint of its former employee. The evidence shows that the plaintiff's interest in its customers is not similar to the protectable interest shown in *Canfield* and *Cockerill*. Under these circumstances any enforcement of the restrictive covenant would be an effort to prevent competition *per se*. For the above reasons, the judgment of the circuit court of Cook County is affirmed.

In view of our decision that the restrictive covenant in this case is unenforceable by the plaintiff, there is no need for this court to consider the second issue presented for review as to whether the scope of the covenant is reasonable.

Judgment affirmed.

SCHWARTZ and McNAMARA, JJ., concur.