IROQUOIS INDUSTRIES CORP., Plaintiff-Appellee, *v.* GEORGE P. POPIK *et al.*, Defendants-Appellants.

First District (2nd Division)    No. 80-2148

Opinion filed December 2, 1980.

William T. Rodeghier, of Chicago, for appellant George P. Popik.

Robert E. Pfaff, of Chicago (Jenner & Block, of counsel), for appellee.

Mr. JUSTICE DOWNING delivered the opinion of the court:

Plaintiff, Iroquois Industries Corporation (Iroquois), brought this action, in reliance upon a post-employment restrictive covenant, seeking an injunction to restrain its former employee, defendant George P. Popik, from soliciting or accepting orders for paper products from 209 customers of Iroquois.[1] After an evidentiary hearing, the trial court found Iroquois had a protectible business interest in the 209 customer accounts. The court then issued a preliminary injunction restraining Popik from further contact with those customers pending a full hearing on the merits. Popik asks this court to determine whether the trial court abused its discretion when it granted the preliminary injunction.

The facts adduced during the preliminary hearing indicate that Iroquois is a distributor of paper products and packaging materials. Iroquois' president and owner, Marvin Gordon, testified that Popik was

---

[1] The Anle Paper Co., Inc., does not join in this appeal.

hired as a salesman for the company in July 1975. Popik was an experienced salesman. Although Iroquois educated Popik in its products, the company had no formal training program. Gordon testified that Iroquois was involved in a very competitive industry which requires its salesmen to become well versed in their customers' requirements. The salesman is the primary link between the company and the customer. A very close personal relationship between salesmen and their accounts is necessary. Gordon also stated that the number of potential customers of the products his company sells in the Chicago metropolitan area amounts to the "tens of thousands."

During the term of Popik's employment he signed a contract.[2] On April 7, 1980, Popik's employment with Iroquois was terminated. About two weeks later, Popik secured employment with the Anle Paper Company. Six weeks later, after Iroquois filed its complaint for injunctive relief, Popik left the employ of Anle. During the course of his employment at Anle, Popik disclosed the names of customers he had called upon while employed by Iroquois. He also made several calls upon some of those accounts, solicited their business, and made sales.

Popik testified at the hearing that he was employed by Iroquois as a straight commission salesman to sell the company's products to any account in the metropolitan Chicago area. He stated he generated 90% to 95% of the 209 customers he called upon while employed by Iroquois. He generated these accounts by "cold calling" the business entities whose names he acquired from the classified index in the telephone or industrial directories available to all salesmen in the industry. Iroquois gave Popik about a dozen accounts. These accounts represented customers who had either not made recent purchases or made small purchases.

---

[2] Popik's employment contract provided, in pertinent part:

"WHEREAS, Representative recognizes and acknowledges that his position is one of trust and confidence and that he is or will be privy to secret or confidential information, such as, but not limited to, the Company's list of customers, pricing methods, sales methods and other important confidential data that has taken the Company a considerable number of years and great expense to develop and that this confidentiality is required to be maintained for the continued success of the Company and is essential for the protection of the Company's business interests;
° ° °

Representative shall not, during the term and for a period of two years after termination of this Agreement, associate himself ° ° ° as employee ° ° ° with the operation of any business competitive to Company. This restriction shall apply only to actual or prospective accounts, clients or customers of Company upon whom Representative called during the time he was employed by Company.
° ° °

Anything herein to the contrary notwithstanding, Representative shall hold for the benefit of Company all knowledge of customer or trade lists and all other secret or confidential information ° ° ° and Representative shall not, during his employment or thereafter, communicate or divulge any such information ° ° ° to any person ° ° °."

After argument of counsel, the trial court found that the business engaged in by the parties was highly competitive; that neither the time nor area restrictions in the instant covenant were unreasonable; that no trade secrets or special knowledge of Iroquois was involved in the case; but that because Popik knew at the time of the covenant what he was signing, the terms of the restrictive covenant require imposition of a preliminary injunction. The trial judge also indicated that Iroquois had a "certain proprietary interest * * * on these accounts even though [Popik] brought them in." The court then enjoined Popik from soliciting or accepting orders from any account represented by the list of 209 customers he called upon while employed by Iroquois.

## I.

■■ This is an appeal from the trial court's issuance of a preliminary injunction (Ill. Rev. Stat. 1979, ch. 110A, par. 307(a)(1)). This court has previously stated the applicable law as follows:

> "In order to obtain a temporary or preliminary injunction, a movant must establish irreparable injury and the likelihood of success on the merits. Likelihood of success on the merits does not mean a showing which will in all events warrant relief in the final hearing. Rather, it means the movant must convince the trial court that he is probably entitled to the relief prayed for if the proof should sustain his allegations. [Citations.] In addition, the trial court must also conclude that the granting of the temporary relief outweighs any possible injury which defendant might suffer by its issuance. [Citation.]
>
> The issuance or denial of a preliminary injunction is addressed to the trial court's sound discretion. Its findings will not be disturbed unless they are against the manifest weight of the evidence. [Citation.]" (*Booth v. Greber* (1977), 48 Ill. App. 3d 213, 217, 363 N.E.2d 6, *appeal denied* (1977), 66 Ill. 2d 628.)

Where, as here, the injunction is dependent upon the enforceability of a restrictive covenant, the covenant will be recognized if it is reasonably necessary to protect the employer from improper or unfair competition. The prevention of competition *per se*, however, is an unreasonable purpose which renders the covenant unenforceable. (*Booth v. Greber* (1977), 48 Ill. App. 3d 213, 218.) Thus, analysis of the alleged business interest to be protected is necessary.

Popik contends the trial court abused its discretion by issuing a preliminary injunction in the absence of evidence that Iroquois has a protectible business interest in the 209 accounts. Popik notes that Iroquois neither alleged nor proffered evidence that he was anything more than an ordinary salesman; that any one of the accounts was long-established; or

that but for his employment by Iroquois he would not have acquired the names of those accounts. He concludes that absent this evidence, the trial court's finding of a protectible business interest in the accounts was against the manifest weight of the evidence.

Iroquois responds that Popik obligated himself to a reasonable restriction on his activities subsequent to termination of employment. It argues that the covenant permits it to put new salesmen on these accounts to compete with its competitors on an equal basis, and forecloses Popik, who knows these customers, from taking the business with him while in the employ of another. Iroquois relies on several cases for the proposition that an employer is entitled "not to have his old customers enticed away from him by former employees." (See, *e.g., Booth v. Greber; Frank B. Hall & Co. v. Payseur* (1979), 78 Ill. App. 3d 230, 236, 396 N.E.2d 1246; *Armour & Co. v. United American Food Processors, Inc.* (1976), 37 Ill. App. 3d 132, 137, 345 N.E.2d 795; *Wessel Co. v. Busa* (1975), 28 Ill. App. 3d 686, 693, 329 N.E.2d 414, *appeal denied* (1975), 60 Ill. 2d 602.) Furthermore, Iroquois claims a proprietary interest in the 209 customers established pursuant to the terms of the employment contract which recited that customer lists were among those interests Iroquois considered confidential. The contract, Iroquois argues, is sufficient to evidence the reasonableness of its business interest. Iroquois concludes that interest is therefore protectible. We disagree.

The cases relied upon by Iroquois do not assert the claimed entitlement in a vacuum. Each case rests upon significant facts not apparent here. In *Booth v. Greber*, the former employee acquired access to her employer's *long-standing* customers *only* through her employment. In *Frank B. Hall & Co. v. Payseur*, the employee was a director and vice-president of the former employer, and thus had special access to that employer's clients' insurance needs. In *Armour & Co. v. United American Food Processors, Inc.*, and *Wessel Co. v. Busa*, the former employees were given access to long-established pricing information and customer lists while they occupied managerial positions within their former companies. Each list was established to be confidential independent of any recital within the restrictive covenant. Here, Iroquois relies exclusively upon the recital within the covenant to establish a confidentiality belied by Popik's uncontradicted testimony. Thus, the contract itself is used to establish an interest in customers which ordinarily is unprotectible. See *House of Vision, Inc. v. Hiyane* (1967), 37 Ill. 2d 32, 38, 225 N.E.2d 21.

■■ The instant record shows that the names of the customers were and are readily ascertainable by reference to a telephone or industrial directory. Popik developed 90% to 95% of the customers himself, without reliance upon Iroquois. Thus, this case is similar to *Image Supplies, Inc. v.*

*Hilmert* (1979), 71 Ill. App. 3d 710, 714, 390 N.E.2d 68, where the court stated:

"[A]ny of plaintiff's competitors could readily obtain the names and addresses of those firms interested in * * * supplies. The names were listed in the telephone directory and in professional publications. 'While clientele may properly be called the customers of a particular business, they cannot be considered the "property" of that business.' "

Absent evidence of a protectible business interest in the 209 customers, enforcement of the restrictive covenant would be an effort to prevent competition *per se.* Accordingly, issuance of a preliminary injunction to enforce the covenant is an abuse of discretion. Therefore, the preliminary injunction is vacated, the order of the trial court is reversed, and the cause is remanded for a determination on its merits.

Reversed and remanded.

PERLIN, P. J., and STAMOS, J., concur.