MARATHON PETROLEUM CO., formerly known as Marathon Oil Company, an Ohio Corporation, Plaintiff,

v.

CHRONISTER OIL COMPANY, an Illinois corporation, Grady M. Chronister, and Linda K. Chronister, Defendants.

No. 87–3234.

United States District Court,
C.D. Illinois,
Springfield Division.

June 8, 1988.

Edward J. Cunningham, William F. Trapp, Brown, Hay & Stephens, Springfield, Ill., for plaintiff.

James R. Potter, Craig A. Randle, Londrigan, Potter & Randle, P.C., Springfield, Ill., for defendants.

## OPINION

RICHARD MILLS, District Judge:

*Ex turpi contractu actio non oritur.*

A contract founded upon an illegal consideration cannot be enforced.

Marathon Petroleum Company filed this diversity action under 28 U.S.C. § 1332 seeking monetary and injunctive relief against Chronister Oil Company and its proprietors, Grady and Linda Chronister, as a result of their retail sale of gasoline allegedly prohibited by a noncompetition agreement.

In accordance with Fed.R.Civ.P. 52, the Court on July 9, 1987, denied Marathon's application for a preliminary injunction for failure to establish a reasonable likelihood of success on the merits. Because the contract appeared to be an illegal covenant in restraint of trade under Illinois law, the Court directed Marathon to show cause why its complaint should not be dismissed.

Now before the Court is Plaintiff's motion for reconsideration of the July 9 order and discharge of the rule to show cause.

For the following reasons, the motion is denied and the case dismissed.

### I

Defendants in September 1981 agreed to sell Russell Stewart Oil Company certain real and personal properties situated throughout Illinois in exchange for payment of $9,639,072.93. Of that amount, the assets purchase agreement allocated $1,623,000 to land, $3,113,772.93 to buildings, and $4,902,300 to equipment and other tangible property. Included in the sale were two Springfield self-service gas stations consisting mainly of fuel pumps, cashiers booths, and restrooms.

At the closing of the deal on October 1, Stewart Oil notified Defendants that as the buyer it had assigned all rights and duties arising under the contract to Marathon, 50% owner of the assignor. The same day, Marathon and Chronister entered into a noncompetition agreement pursuant to ¶ 14 of the sales accord. For $300,000 consideration payable over ten years, Defendants assented to the following:

Sellers will not compete with Marathon Oil Company, or any subsidiary or affiliate of Marathon, or the successors or assigns of any of them, directly or indirectly, as principal, agent, employee, officer, director, shareholder, partner or otherwise, in the operation of retail sales outlets of gasoline or other motor fuel at any place within the State of Illinois, Rock County, Wisconsin, and the City of St. Louis, Missouri, for a period of 10 years from date of execution hereof....

Shortly thereafter, Plaintiff deeded the Springfield concerns to Stewart Oil, its affiliate and successor under the restrictive covenant. Today these establishments continue to operate at 1100 West Jefferson Street and 1801 North Grand Avenue East under their original trade name of "Super Gas," which Defendants assigned to Plaintiff per the agreement. Following the transaction, Stewart Oil opened a third station with the same name and features at 1901 West Jefferson Street.

Marathon to date has remitted $280,000 consistent with the restrictive covenant. But despite their unflinching acceptance of the petroleum company's remuneration, Defendants, with over 90% of the payments in tow, have now reentered the retail gasoline market in Springfield and sought to undercut their competitor's prices. Currently, Defendants are managing two "QIK–N–EZ" stations located on the corners of Chatham Road and Monroe Street, and Stevenson Drive and 11th Street respectively. These operations are characterized by self-serve gas pumps and convenience marts.

### II

Covenants not to compete must arise in one of two ways to be enforceable. The agreement may be ancillary to an employment contract or collateral to a sale of property. *See generally* Note, *Validity of Covenants Not to Compete: Common Law Rules and Illinois Law*, 1978 U.Ill. L.F. 249. A promise to refrain from competition resting alone is considered an attempt to restrain trade *per se* and unen-

forceable. Restatement (2d) of Contracts § 187 (1981).

Illinois decisions, which the parties agree govern this controversy, view restrictive covenants accompanying the purchase of assets more favorably than those connected with the employer-employee arrangement. *See In re Talmage,* 758 F.2d 162, 165–66 (6th Cir.1985) (applying Illinois law); *O'Sullivan v. Conrad,* 44 Ill.App.3d 752, 755, 3 Ill.Dec. 383, 386, 358 N.E.2d 926, 929 (5th Dist.1976). This is so because business entities are presumed better able to reach an accord voluntarily after arms length negotiations. In contrast, the hired individual is more likely the subject of overreaching. Note, *supra* at 261. Still, "[w]hatever may be said for freedom of contract in general, restrictive covenants impair the availability of services and interfere with competition; therefore, such covenants 'are carefully scrutinized by the courts.'" *Rao v. Rao,* 718 F.2d 219, 223 (7th Cir.1983), *quoting Boyar–Schultz Corp. v. Tomasek,* 94 Ill.App.3d 320, 323, 49 Ill.Dec. 891, 893, 418 N.E.2d 911, 913 (1st Dist.1981) (considering restriction ancillary to sale of business).

 A restraint ancillary to a sale of property in Illinois must be reasonable. Whether the contract is reasonable or contrary to public policy is ultimately a question of law. *Talmage,* 758 F.2d at 165; *Boyar–Schultz,* 94 Ill.App.3d at 323, 49 Ill.Dec. at 894, 418 N.E.2d at 914. The decision as to the covenant's enforceability, however, turns on the circumstances of each case. *Tarr v. Stearman,* 264 Ill. 110, 118–19, 105 N.E. 957, 960–61 (1914); *Lanzit v. J.W. Sefton Mfg. Co.,* 184 Ill. 326, 330, 56 N.E. 393, 394 (1900); *O'Sullivan,* 44 Ill.App.3d at 758, 3 Ill.Dec. at 387, 358 N.E.2d at 930. While the starting point for any discussion must be the terms of the agreement itself, the intent of the parties cannot alone determine the restriction's compliance with the state's public policy. That issue is for the Court to decide. *See Newby v. Wal–Mart Stores, Inc.,* 659 F.Supp. 879, 880–81 (C.D.Ill.1987).

 Caselaw separates the appropriate analysis into three parts. Illinois courts require the restrictive covenant to be (1) necessary in its full extent for the protection of the buyer; (2) unoppressive to the seller; and (3) not harmful to the public. *Bauer v. Sawyer,* 8 Ill.2d 351, 355, 134 N.E.2d 329, 331 (1956); Restatement, *supra* § 188. Consequently, the mere breach of a restrictive covenant is insufficient to warrant relief. Aside from justifying the durational and territorial extent of the restraint, *see generally* Annotation, *Enforceability of Covenant Against Competition, Ancillary to Sale or Other Transfer of Business, Practice, or Property, as Effected by Territorial Extent of Restriction,* 46 A.L.R.2d 119 (1956); Annotation, *Enforceability of Covenant Against Competition, Ancillary to Sale or Other Transfer of Business, Practice, or Property, as Effected by Duration of Restriction,* 45 A.L.R. 2d 77 (1956), plaintiff's first task is to illustrate injury to its legitimate business interest apart from defendant's violation of the agreement. *American Hardware Mut. Ins. Co. v. Moran,* 545 F.Supp. 192, 195 (N.D.Ill.1982), *aff'd,* 705 F.2d 219 (7th Cir. 1983); *Behn v. Shapiro,* 8 Ill.App.2d 25, 35, 130 N.E.2d 295, 299 (1st Dist.1955).

The protectible interest which a buyer procures through a restrictive covenant ancillary to a sale of assets originates either in the good will of the business sold or the confidential information used in its operation:

When a business is sold, restraints may be imposed to protect the value of the good will transferred, and where specialized knowledge, such as secret processes or the like are involved, restraints may protect against the competition resulting from disclosure or appropriation.

*House of Vision v. Hiyane,* 37 Ill.2d 32, 37–38, 225 N.E.2d 21, 24 (1967) (per Schaefer, J.) (treating prerequisites as exhaustive). *See also SSA Foods, Inc. v. Giannotti,* 105 Ill.App.3d 424, 429, 61 Ill.Dec. 307, 312, 434 N.E.2d 460, 465 (1st Dist. 1982) (interest which purchaser attempts to protect is possession and enjoyment of good will in property transferred). Consistent with Illinois decisions, federal courts have recognized that covenants not

to compete in Illinois are enforceable *"only to protect either the good will of a firm's business or the confidentiality of information valuable to the firm's business."* *American Hardware*, 705 F.2d at 221 (employment contract) (emphasis added). *See also Talmage*, 758 F.2d at 166 (business licensing agreement).

Accordingly, the applicable cases consistently reason that a promisee's desire to retain an establishment's customers is by itself inadequate. *See e.g., American Hardware*, 545 F.Supp. at 196. Something more is required such as a permanent loyal clientele which gives rise to a presumption of good will. *American Hardware*, 705 F.2d at 222; *House of Vision*, 37 Ill.2d at 38–39, 225 N.E.2d at 24–25; *H.B.G. Corp. v. Houbolt*, 51 Ill.App.3d 955, 961, 10 Ill. Dec. 44, 48, 367 N.E.2d 432, 436 (3d Dist. 1977); *Nationwide Advertising Serv., Inc. v. Kolar*, 14 Ill.App.3d 522, 526–29, 302 N.E.2d 734, 736–38 (1st Dist.1973). The explanation for this rationale is that a restrictive covenant must safeguard one or both of the aforementioned interests; otherwise, the injury caused to the public as well as the promisor in restraining competition and restricting services necessarily outweighs any benefit to the promisee. *American Hardware*, 705 F.2d at 221.

### III

Marathon neither alleges nor argues the existence of any specialized knowledge conveyed under the sales agreement which Defendants might utilize to harm it. Thus, the initial issue for consideration is whether Marathon acquired the protectible asset of good will as an incident to its purchase of the Super Gas'. The Court denied Plaintiff's request for preliminary injunctive relief because it had not shown that the restrictive covenant was arguably related to the protection of good will in the property transferred. Nothing has changed.

■ Since Lord Eldon first defined good will in *Cruttwell v. Lye*, 17 Vesey 335, 346 (1810), as "nothing more than the probability that the old customers will resort to the old place," a multitude of courts have struggled to refine the elusive concept.

*See* 18A Words & Phrases, *Good Will* 210 (1956). Although its definition may depend on the context in which the term is used, good will in the legal sense has come to mean the advantages a business has over competitors as a result of its name, location, and owner's reputation:

> The good will of a business has been defined to be the benefit which arises from it having been carried on for some time in a particular place, or by a particular person or from the use of a particular trade-mark, and its value consists in the probability that the customers of the old firm will continue to be customers to the new.

*United Romanian Mkt. v. Abramson*, 218 Ill.App. 577, 582 (2d Dist.1920). *Accord In re McCubbin*, 125 Ill.App.3d 74, 77, 80 Ill. Dec. 560, 562, 465 N.E.2d 672, 674 (1st Dist.1984) (good will of business is characterized by personal relationships and customer contacts which owner has developed); *SSA Foods*, 105 Ill.App.3d at 429, 61 Ill.Dec. at 311, 434 N.E.2d at 464 (where party sells established business including its name, he cannot thereafter resume label in carrying on competing enterprise).

Marathon, however, describes good will differently. According to its expert, finance professor George Overstreet from the University of Virginia, the good will which Plaintiff seeks to protect in this instance is represented by the difference between the $9.9 million purchase price and the $4.8 million appraised value of the tangible assets. In other words, since Marathon paid in excess of what it believed the assets were worth, the intangible asset of good will is necessarily present.

While the Court was certainly entertained by the expert's free wheeling presentation at the January 26 show cause hearing, it remains unpersuaded. Marathon's definition of good will in a financial sense is no doubt accurate. But the conclusion that a restrictive covenant is designed to protect a legally recognized interest based only upon Plaintiff's self-serving appraisal is untenable. Too many other factors point to the inevitable finding that the noncompetition agreement is nothing

more than an attempt to eliminate a competitor from the market.

The assets purchase agreement specifically allocated values to each of Defendants' tangible assets which totalled the purchase price. Although ¶ 5.09 contained an offhand reference to the seller's duty to preserve the good will of its customers pending the closing, the contract does not purport to transfer the asset. Nor does the restrictive covenant lend Marathon support. The document expressly states that its purpose is to assure the "Sellers and their principals will not compete in business with Stewart for a prescribed period of time within a defined area." Perhaps this is why Plaintiff never assigned any part of the consideration paid for Defendants' assets to good will on its books, records, or tax returns.

In its original complaint, Marathon claimed that eleven Springfield stations with which it is associated were suffering irreparable harm from Defendants' sale of motor fuel. But Plaintiff held an interest in nine of the concerns prior to the transaction with Chronister. Marathon could not possibly have received any legitimate interest, good will or otherwise, worthy of protection in those establishments by way of the assets purchase agreement. While Marathon recently amended the complaint to omit the widespread allegation of harm, the initial pleading as an evidentiary admission strongly suggests that the noncompetition agreement was undertaken for the improper purpose of preventing competition *per se*. *Contractor Utility Sales Co. v. Certain–Teed Products Corp.*, 638 F.2d 1061, 1084 (7th Cir.1981), *cert. denied*, 470 U.S. 1029, 105 S.Ct. 1397, 84 L.Ed.2d 785 (1985) (prior pleadings are admissible in civil actions as evidentiary admissions). Plaintiff's counsel explained the covenant's purpose at the preliminary injunction hearing:

This was Marathon purchasing the State of Illinois and all operations within the State of Illinois. It was the whole state that was being acquired by Marathon.... Marathon ... as part of that purchase agreement is saying, we want to have the whole territory in which you are located for not only the assets that we're purchasing, but for ourselves.

All this is not to say that Marathon obtained nothing from Defendants which might give rise to protectible good will. The asset may impliedly be part of any contract for the sale of a business, and may figure in its valuation. *Board of Trade v. Dow Jones & Co.*, 108 Ill.App.3d 681, 693 n. 2, 64 Ill.Dec. 275, 284 n. 2, 439 N.E.2d 526, 535 n. 2 (1982), *aff'd*, 98 Ill.2d 109, 74 Ill.Dec. 582, 456 N.E.2d 84 (1983). *See generally* S. Williston, *Williston on Contracts* § 1640 (3d ed. 1972). For instance, a certain amount of good will surely exists in the trademark "Super Gas." Similarly, the location of the stations could create some customer loyalty.

██ But a noncompetition agreement prohibiting Defendants from selling fuel anywhere in the State of Illinois for ten years was not designed to protect these elements of good will. The Chronisters have not erected their new stations across the street from the old. *See* Appendix. Nor are they utilizing their former trade name. Instead, Marathon's grievance centers largely around Defendants' price cutting. The affidavit of Stewart Oil's vice-president confirms as much:

Based upon my examination of our sales for May 1987 as compared with previous months and years, it is clear that the competition of the QIK–N–EZ station at Chatham Road and Monroe Street is having a harmful effect on Stewart. The volume of gasoline which our stations are selling is reduced due to the competition of QIK–N–EZ and the price at which we can sell those gallons is also less due to price competition from QIK–N–EZ. If this trend continues, Stewart will continue to lose sales, customers, and revenues due to the competition of QIK–N–EZ.

Customer loyalty in the sale of gasoline today is primarily a function of price and convenience. Plaintiff would suffer no more injury if a stranger began to compete in the manner that Defendants have. *See McCook Window Co. v. Hardwood Door*

*Corp.,* 52 Ill.App.2d 278, 289, 202 N.E.2d 36, 42 (1st Dist.1964). It is not the Chronisters' ownership of the competing enterprises which is harming Plaintiff, but rather competition *per se.* Any attempt, however, to purchase away competitors in Illinois must fail as violative of the state's public policy. A noncompetition agreement ancillary to the sale of a business is generally appropriate only where competition by the former owner would impair the operation of the purchaser beyond that which would arise from the competition of an unrelated third party with similar marketing skills. *Compare American Hardware,* 705 F.2d at 222 (insurance business selling packaged plans has no good will). *Nationwide Advertising,* 14 Ill.App.3d at 526, 302 N.E.2d at 736 (advertising agency's relationship with its customers was transitory rather than permanent). This is not such a case.

In dismissing this action, the Court shall leave the parties where it found them. It is a well established rule in Illinois that when the parties to an illegal bargain are *in pari delicto,* "the law will not stoop to inquire whether one has gained an advantage over the other." *Arter v. Byington,* 44 Ill. 468, 469 (1867). *Accord Stamatiou v. United States Gypsum Co.,* 400 F.Supp. 431, 439 (N.D.Ill.1975), *aff'd* 534 F.2d 330 (1976); *Wiegand v. Wiegand,* 410 Ill. 533, 542–43, 103 N.E.2d 137 (1951).

Admittedly, Defendants' conduct is suspect. But Marathon is a large international corporation engaged in the production and sale of petroleum products throughout the world. It should have known better than to attempt to buy competitors out of the market.

Because Marathon has made no showing that the noncompetition agreement is reasonably related to the protection of its affiliate's possession and enjoyment of the good will in the property transferred, the complaint is DISMISSED as based upon an illegal contract in restraint of trade under Illinois law.

Judgment for Defendants.

Case CLOSED.

APPENDIX