NO. 4-06-0113     Filed 4/18/07

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

| | | |
|---|---|---|
| In re: JEROME S., Alleged to be a | ) | Appeal from |
| Delinquent Minor, | ) | Circuit Court of |
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | McLean County |
|      Petitioner-Appellee, | ) | No. 04JD150 |
|      v. | ) | |
| JEROME S., | ) | Honorable |
|      Respondent-Appellant. | ) | G. Michael Prall, |
| | ) | Judge Presiding. |

_____

JUSTICE COOK delivered the opinion of the court:

Respondent minor, Jerome S. (born July 24, 1991),
appeals the trial court's denial of his motion to suppress
evidence, which resulted in his delinquency adjudication for
unlawful use of a weapon and revocation of court supervision.  We
affirm.

I. BACKGROUND

On November 5, 2004, the State filed a petition for
adjudication of wardship, alleging Jerome S. had resisted a
police officer.  Jerome S. admitted the allegation.  On March 28,
2005, the trial court sentenced Jerome S. to 12 months of court
supervision.

On November 8, 2005, the State filed a supplemental
petition for adjudication of wardship.  The petition alleged
unlawful use of a weapon and attempted disarming of a police
officer stemming from events that occurred in Miller Park in

Bloomington on the evening of November 5, 2005.

Jerome S. filed a motion to quash his arrest and suppress evidence, urging he was illegally arrested without a warrant or probable cause. At a hearing on the motion on December 6, 2005, Jerome S. offered the testimony of his sister, Jolene S., and four of his sister's friends, Sharee Conely, Shea Brown, Jessica Burkes, and Margiana Jackson, all of whom were with him in the park on November 5.

Each testified that they went to the park with a group of friends to fight another group of girls, whom Brown identified as "Dub City" girls. Jerome S. went along. Conely, Brown, Burkes, and Jackson gave various estimates that there were between 10 and 15 people in their group. The other group was larger, about 20 or 30 people, according to Brown and Burkes.

The two groups of girls did not fight. Instead, Jerome S. fought with another boy. Burkes testified she heard but did not see Jerome S. try to use a taser on the boy. Jackson also indicated she did not see Jerome S. with a taser but saw electricity coming from a taser. Conely, Brown, and Jolene did not mention whether Jerome S. tried to use a taser during the fight.

The fight broke up, apparently because the groups spotted a police officer, though Jolene testified she did not see the officer until later. Conely, Jolene, Burkes, and Jackson stated their group turned around and started walking away. Brown

- 2 -

indicated her group was backing up, still facing the other group. Conely, Jolene, and Burkes said Jerome S. was yelling at the other group, but Brown and Jackson denied Jerome S. was doing so.

Conely, Burkes, and Jackson testified the police officer pulled his car onto the grass near their group, and the headlights lit the area. Brown and Jolene stated there were no car lights and the area was very dark. Brown specified that the officer parked on the street and walked through the park. All of them testified Jerome S. had nothing in his hand at the time.

Brown testified the officer walked over to the other group and told them to leave, and they did. Jackson, however, stated the officer did not tell either group to leave. Burkes said the other group remained in the area and saw the officer "jump" on Jerome S., only leaving when the officer called for backup.

Conely testified Jerome S. was walking away when the officer told Jerome S. to get down; Jerome S. laid on the ground, and the officer hit Jerome S. in the head. Brown stated the officer said Jerome S. needed to calm down. She said Jerome S. was "moving back" to leave the park, and the officer told him to get to the ground; Jerome S. did not, so the officer threw him to the ground and hit him. Jolene, Burkes, and Jackson also testified their group was leaving the park, but they stated the officer did not say anything to Jerome S. before knocking him to

the ground and punching him. Jolene said Jerome S. got up and the officer put Jerome S. back on the ground, but Jackson testified Jerome S. pushed the officer off him and punched the officer before she and the rest of their group grabbed Jerome S.

Jackson testified the officer then told Jerome S. to get down, so Jerome S. got on his knees, but the officer told Jerome S. to lay on the ground. All five witnesses agreed Jerome S. did not grab at or struggle with the officer after the initial scuffle. At some point more officers arrived. Jolene, Jackson, and Conely's testimony differed on when that occurred.

Jerome S. also testified. He stated he had gone to the park to fight the other group. The two groups were still yelling at each other when the officer came, but he denied yelling that he was part of "Dub City," as that is a different group of kids.

Jerome S. said his group was walking away and the other group was following them when the officer drove between the two groups. Though he looked back to yell at the other group, his body faced away from them. When he saw the lights from the police car come from behind the group, he turned around. The officer then attacked him without saying anything. Jerome S. got up and the officer punched him in his cheek. Jerome S. admitted he was getting ready to hit the officer when members of his group grabbed him.

Jerome S. testified the officer told him to get on the

ground, so he got on his knees.  The officer again told him to get on the ground, so he laid on his stomach.  The officer handcuffed Jerome S. and searched his pockets.  Jerome S. denied grabbing at or struggling with the officer but admitted yelling at the officer.

The State offered the testimony of John Swartzentruber, the Bloomington police officer involved in the November 5, 2005, incident.  Swartzentruber stated that when he responded to a call about a potential fight in the park, he saw a group of about 50 kids.  He parked his squad car on the street and spoke with the group, who said they were going to play ball.  Swartzentruber started to leave but stopped to speak with a woman who was standing on her porch.  She told him she had heard some kids talk about fighting.  He said he would make sure the kids left.

Swartzentruber then saw another group of about 20 people standing more closely together and yelling.  He drove near to that group, and a young female told him a young, black male wearing a white T-shirt had a stun gun.  She pointed toward the smaller group, which was about 100 feet away, before she walked away from Swartzentruber.  He called other units and walked toward the group.  As he walked, he heard the ticking sound of a stun gun.

At that time, the smaller, more compact group was walking away and yelling "Dub City."  The larger group was spread

out, walking toward the smaller group and yelling "Fuck Dub City." Swartzentruber identified himself as a police officer and told the larger group to leave. Those people walked out of his line of sight. He then told the smaller group to stop. When he told them a second time, they turned and faced him. Jerome S., who was with the smaller group, was a black male wearing a white T-shirt. Jerome S. had a stick in his hand, which he dropped when Swartzentruber said to do so.

As a young female talked to Swartzentruber about the other group, Jerome S. walked in the direction the other group had headed. Jerome S. was mumbling, "You want a piece of me," and other things of that nature.

Swartzentruber pointed at Jerome S. and told him to stop three or four times. When Jerome S. kept walking, Swartzentruber pushed him to the ground and attempted to take him into custody. Though Swartzentruber admitted he did not say anything to Jerome S. when he pushed Jerome S. down, Swartzentruber testified he intended to take Jerome S. into custody for "obstructing."

Jerome S. got to his knees and wrapped his arms around Swartzentruber's waist. Members of the smaller group began to pull at Swartzentruber from behind, and the officer felt someone pulling at his duty weapon from the front. When Swartzentruber pushed Jerome S. away, Jerome S. stood up and swung at

Swartzentruber. The officer hit Jerome S. and called for more officers.

As Swartzentruber was waiting for backup, he directed his taser at the group. He told Jerome S. he was under arrest and to get down on the ground. After the third command, Jerome S. complied. Other officers arrived, and Swartzentruber got on top of Jerome S. to handcuff him. Jerome S. was cursing at Swartzentruber and would not cooperate when Swartzentruber began to search his pockets, so the officer forced Jerome S. to his side. Swartzentruber found a stun gun in Jerome S.'s left pocket.

The trial court denied Jerome S.'s motion to quash arrest and suppress evidence, finding that because Jerome S. failed to comply with the officer's demands to stop, the officer had a right to stop and arrest him. Alternatively, the court found that the officer had probable cause to arrest Jerome S. for disorderly conduct "because certainly, approaching a hostile group in a fight situation is going to cause a, potentially a major problem."

The parties then stipulated that the trial court could consider the testimony from the hearing as evidence for Jerome S.'s trial on the charges. The State also presented the testimony of two other Bloomington police officers, Martin Krylowicz and Bill McGonnigal, who arrived at Miller Park on November 5,

2005, as Swartzentruber had Jerome S. face down on the ground. Krylowicz helped arrest Jerome S., and McGonnigal ordered back the 10 to 15 people who were nearby yelling at Swartzentruber.

The trial court adjudicated Jerome S. a delinquent minor. It found Jerome S. committed the offense of unlawful use of a weapon but found him not guilty of attempting to disarm an officer.

On December 16, 2005, the State filed a petition to revoke court supervision alleging Jerome S. had violated his supervision by committing the weapon offense. The trial court revoked Jerome S.'s supervision on December 19, 2005. At a hearing on January 31, 2006, the court resentenced Jerome S. to 12 months of probation. The court also imposed 30 days' detention, with credit for the 44 days Jerome S. had already served. This appeal followed.

## II. ANALYSIS

Jerome S. contends Swartzentruber did not have probable cause to arrest him for obstructing a peace officer because Jerome S. merely ignored Swartzentruber. He also urges no probable cause existed to arrest him for disorderly conduct, as the trial court alternatively found, because there was only a potential that his actions would disturb the peace in the future. Accordingly, Jerome S. argues the trial court should have granted his motion to quash arrest and suppress evidence.

"Review of a motion to suppress presents both questions of law and fact." In re Christopher K., 217 Ill. 2d 348, 373, 841 N.E.2d 945, 960 (2005). "A trial court's credibility determinations and findings of historical fact will be upheld on review unless they are against the manifest weight of the evidence." Christopher K., 217 Ill. 2d at 373, 841 N.E.2d at 960. However, we review de novo the ultimate legal question of whether the evidence should be suppressed. Christopher K., 217 Ill. 2d at 373, 841 N.E.2d at 960.

As an initial matter, we note that the trial court rejected the testimony of Jolene, Burkes, Jackson, and Jerome S. that Swartzentruber did not say anything to Jerome S. before knocking Jerome S. to the ground. Instead, the court found that Swartzentruber repeatedly ordered Jerome S. to stop and Jerome S. failed to comply with the officer's demands. The court also found that Jerome S. had been "approaching a hostile group in a fight situation" when Swartzentruber knocked Jerome S. down to the ground. Because the court was in the best position to determine the credibility of the witnesses, we cannot say these factual findings are against the manifest weight of the evidence, especially in light of the inconsistencies in Jerome S.'s witnesses' testimony.

Both the fourth amendment to the United States Constitution (U.S. Const., amend. IV) and article I, section 6, of the

Illinois Constitution (Ill. Const. 1970, art. I, §6) protect against unreasonable searches and seizures. People v. Moss, 217 Ill. 2d 511, 518, 842 N.E.2d 699, 704-05 (2005). An arrest without probable cause violates an individual's right against unreasonable seizures. People v. Washington, 363 Ill. App. 3d 13, 23, 842 N.E.2d 1193, 1202 (2006). The State and Jerome S. agree that Swartzentruber arrested Jerome S. when the officer first made physical contact with Jerome S. by knocking him to the ground. See Washington, 363 Ill. App. 3d at 23, 842 N.E.2d at 1202 ("An arrest occurs when a person's freedom of movement is restrained by physical force"); People v. Fortney, 297 Ill. App. 3d 79, 86, 697 N.E.2d 1, 6 (1998) ("No formal declaration *** is necessary for an arrest to occur"). Accordingly, the question before us is whether Swartzentruber had probable cause to arrest Jerome S. at that time.

"[P]robable cause exists if the facts and surrounding circumstances are sufficient to justify a reasonable belief by the arresting officer that the defendant is or has been involved in a crime." People v. Garvin, 219 Ill. 2d 104, 115, 847 N.E.2d 82, 88 (2006). "The standard for determining whether probable cause is present is probability of criminal activity, rather than proof beyond a reasonable doubt." People v. Lee, 214 Ill. 2d 476, 485, 828 N.E.2d 237, 244 (2005).

Swartzentruber testified at the suppression hearing

that he intended to arrest Jerome S. for "obstructing" when he knocked Jerome S. to the ground after Jerome S. ignored his commands to stop.  Section 31-1(a) of the Criminal Code of 1961 provides:

> "A person who knowingly resists or ob-
> structs the performance by one known to the
> person to be a peace officer *** of any
> authorized act within his official capacity
> commits a Class A misdemeanor."  720 ILCS
> 5/31-1(a) (West 2004).

In People v. Hilgenberg, 223 Ill. App. 3d 286, 289, 585 N.E.2d 180, 183 (1991), the reviewing court found that because "resistance" and "obstruction" both "imply some physical act or exertion," section 31-1 does not proscribe mere argument with a policeman, but "only some physical act which imposes an obstacle which may impede, hinder, interrupt, prevent[,] or delay the performance of the officer's duties."

For example, because the defendants in Hilgenberg only refused to open the door to a residence or permit the entry of the sheriff, they did not engage in an act of physical resistance.  Hilgenberg, 223 Ill. App. 3d at 290, 585 N.E.2d at 184.  Similarly, where the State charged the defendants in People v. Stoudt, 198 Ill. App. 3d 124, 127, 555 N.E.2d 825, 827 (1990), with "'knowingly refus[ing] *** to remove [themselves] from the

400 block of Lincoln Highway *** after being instructed to do so by [a De Kalb police officer],'" the court held their conduct '"did not constitute a violation of a section 31-1 because they did not engage in physical acts of resistance.

More recently, in People v. Synnott, 349 Ill. App. 3d 223, 227, 811 N.E.2d 236, 240 (2004), the Second District clarified that "the distinction between acting and refraining from action is [not] dispositive." The defendant in that case was convicted of obstructing a peace officer after he refused to comply with a police officer's four orders to exit his vehicle. Synnott, 349 Ill. App. 3d at 225, 811 N.E.2d at 238. Synnott cited City of Chicago v. Meyer, 44 Ill. 2d 1, 6, 253 N.E.2d 400, 403 (1969), where our supreme court held the "defendant was properly convicted [under a city ordinance very similar to section 31-1] of interfering with the police in the discharge of their duty to maintain order." "In Meyer, police ordered Vietnam war protesters and supporters to disperse when the police had become unable to maintain order among opposing factions and 'the debate was degenerating to one of physical battle.'" Synnott, 349 Ill. App. 3d at 226, 811 N.E.2d at 239, quoting Meyer, 44 Ill. 2d at 6, 253 N.E.2d at 402.

The Second District distinguished Synnott and Meyer from Stoudt and Hilgenberg on the basis of whether the officers' acts were "authorized" as required by section 31-1. In Stoudt,

- 12 -

the question before the court was whether the refusal to move constituted an act of resistance, but it had also noted that the complaints against the defendants were deficient because they did not properly allege the officer instructing the defendant to move was engaged in an authorized act. Stoudt, 198 Ill. App. 3d at 128, 555 N.E.2d at 828.

Similarly, the court in Hilgenberg determined:

"[A] failure to respond to an officer's request to open a door or permit entry to the premises only has legal significance if the request was authorized within his official capacity and the response of the defendant actually impeded an act the officer was authorized to perform." (Emphasis added.) Hilgenberg, 223 Ill. App. 3d at 290, 585 N.E.2d at 184.

Because the officer did not have a warrant or probable cause coupled with exigent circumstances, he was not authorized to demand entry, and the defendants had a right to refuse his request. Hilgenberg, 223 Ill. App. 3d at 291, 585 N.E.2d at 184.

In contrast, the officers giving the orders to the defendants in Synnott and Meyer were discharging their duties. The officer in Synnott had stopped the defendant's vehicle after observing it traveling about 20 miles per hour over the speed limit; the officer then noticed "indicia of intoxication" and

- 13 -

repeatedly asked defendant to step out of his car. Synnott, 349 Ill. App. 3d at 224, 811 N.E.2d at 237. The officers in Meyer were discharging their "duty to maintain order" when they ordered war protesters to disperse when the protest "was degenerating to one of physical battle." Meyer, 44 Ill. 2d at 6, 253 N.E.2d at 402.

Here, the trial court credited Swartzentruber's testimony that Jerome S. was walking toward the other group, not out of the park. It found Jerome S. was "approaching a hostile group in a fight situation." Given the large number of people in each group, between 10 and 20 in Jerome S.'s group and between 20 and 50 in the other group, it was obviously imperative and well within Swartzentruber's duties that he maintain order in the park. Jerome S.'s act in walking toward the other group despite Swartzentruber's orders to stop, coupled with the officer's authority to give such an order, constituted probable cause for Swartzentruber to arrest Jerome S. Accordingly, the trial court properly denied Jerome S.'s motion to quash arrest and suppress evidence. Given our conclusion, we need not address the State's alternative arguments.

### III. CONCLUSION

For the reasons stated, we affirm the trial court's judgment.

Affirmed.

- 14 -

STEIGMANN, P.J., and APPLETON, J., concur.