In the

# United States Court of Appeals

## For the Seventh Circuit

No. 10-2164

KEVIN SROGA,

*Plaintiff-Appellant,*

*v.*

TIMOTHY WEIGLEN, *et al.*,

*Defendants-Appellees.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 08 C 1789—**Ronald A. Guzmán**, *Judge.*

SUBMITTED JULY 20, 2011—DECIDED AUGUST 18, 2011

Before POSNER, KANNE, and HAMILTON, *Circuit Judges.*

POSNER, *Circuit Judge*. Kevin Sroga has sued Chicago police officers under 42 U.S.C. § 1983, complaining of three arrests that he contends violated his constitutional right to be free from unreasonable seizure of his person. The district court granted the defendants' motion for summary judgment, and so we are obliged to construe the facts as favorably to the appellant as the record permits.

The first arrest was for disorderly conduct. Sroga tried to dissuade an employee of the City of Chicago from towing his car, which was parked on a street near his home and which the City had designated as hazardous because a dolly (a platform on wheels for moving heavy objects) attached to the rear of the vehicle had no license plate. A crowd gathered to watch their altercation. A police officer appeared and told Sroga to calm down and let the driver of the tow truck do his job. Instead Sroga leapt onto the moving car as it was being towed away. At that point he was arrested.

The second arrest, months later, was for theft of lost or mislaid property after Sroga got into another spat with a City employee, who was trying to tow not one but several of Sroga's vehicles. They were parked in a vacant lot, which apparently he owned, and we have no idea why the City wanted them towed. And in fact the driver of the tow truck decided not to tow them. But then he noticed a car parked on the street in front of Sroga's house and decided to tow that vehicle. Later Sroga was told the vehicle was hazardous, though we don't know what the hazard was. To prevent the car from being towed, Sroga got into it as the driver was hooking it up to the tow truck, and despite repeated demands by police that he get out of the car he refused to budge until a sergeant showed up and ordered him to get out. Meanwhile a different police officer had spotted a Chicago Police Department ticket book on the dashboard of yet another of Sroga's vehicles, this one also parked on the street in front of the lot. The police

arrested him, not for disorderly conduct but on suspicion that he had stolen the ticket book.

The third arrest, made more than a year later, was for criminal trespass to "state-supported" land, and occurred shortly after he left a police station upon being released from police custody following still another arrest but not one challenged in this case. (He keeps the Chicago police busy. See Chicago Police Department, "Criminal History Report for Kevin Robert Sroga," May 29, 2008, listing 13 arrests between November 2003 and January 2008. He is also a prolific civil litigant. See, e.g., *Sroga v. Personnel Board*, 833 N.E.2d 1001 (Ill. App. 2005); *Sroga v. Chicago Public Schools*, No. 11 C 2124, 2011 WL 1364036 (N.D. Ill. Apr. 11, 2011); *Sroga v. Decero*, No. 09 C 3286, 2010 WL 4705161 (N.D. Ill. Nov. 9, 2010).) He left by the front door of the police station and walked past a sign that reads "No Loitering No Trespassing" into a parking lot marked with signs that said "Parking Police Personnel Only." A police officer noticed him walking between the rows of police cars peering inside each car. Realizing that he was being observed, Sroga struck up a conversation with an officer who was sitting in one of the cars. He claims she was an old friend, but she offered her handcuffs to another officer to fasten on Sroga.

Surprisingly, none of the three arrests resulted in a prosecution. The issue is their legality under the Fourth Amendment.

The offense of disorderly conduct—the ground of the first arrest—has been around for a very long time. But

like many criminal offenses it is not well defined (pre-sumably for fear that if well defined it would spring loop-holes). Illinois law defines disorderly conduct as an act or acts done "in such unreasonable manner as to alarm or disturb another and to provoke a breach of the peace." 720 ILCS 5/26-1(a)(1). Sroga probably enter-tained rather than alarmed the onlookers of his contre-temps with the driver of the tow truck, but may have alarmed and doubtless distracted the driver. But was his conduct likely to provoke a "breach of the peace"? That depends on what the term means.

We tried to define it decades ago, and our definition has been favorably received by the Illinois courts:

> The term "breach of the peace" has never had a precise meaning in relation to specific conduct. Yet from its early common law origin to the present it has received a fairly well defined gloss. "The offense known as breach of the peace embraces a great variety of conduct destroying or menacing public order and tranquility. It includes not only violent acts but acts and words likely to produce violence in others." *Cantwell v. Connecticut*, 310 U.S. 296, 308 (1940). The term connotes conduct that creates con-sternation and alarm. It is an indecorum that incites public turbulence; yet violent conduct is not a neces-sary element. The proscribed conduct must be volun-tary, unnecessary, and contrary to ordinary human conduct. On the other hand, the commonly held understanding of a breach of the peace has always exempted eccentric or unconventional conduct, no

matter how irritable to others. It seems unnecessary to add that whether a given act provokes a breach of the peace depends upon the accompanying circumstances, that is, it is essential that the setting be considered in deciding whether the act offends the mores of the community.

*United States v. Woodard*, 376 F.2d 136, 141 (7th Cir. 1967); see, e.g., *People v. Allen*, 680 N.E.2d 795, 798-99 (Ill. App. 1997); *People v. Stevens*, 352 N.E.2d 352, 356 (Ill. App. 1976).

The quoted passage starts out well, with the quotation from the *Cantwell* case: a breach of the peace is a violent act or an act likely to provoke violence. It would be a stretch to describe Sroga's jumping on his car as it was being towed in those terms, but the passage from the *Woodard* opinion continues: breach of the peace also includes acts that cause "consternation"; it is an "indecorum," which is to say an indecorous act. Speaking with one's mouth full is indecorous; is it a breach of the peace? Could Sroga really have been thought to have caused "public turbulence"? And after quoting *Cantwell*, which defines a breach of the peace as an act that is violent or causes violence, our opinion states that "violent conduct is not a necessary element."

Much better, and briefer—thus illustrating the limitations of definitional elaboration—is the definition of breach of the peace in the *Restatement (Second) of Torts* § 116 (1965): "a public offense done by violence, or one causing or likely to cause an immediate disturbance

of public order." "Disturbance of public order" seems an apt description of Sroga's jumping on his car as it was being towed, after he had tried to dissuade the driver of the tow truck from towing it. And Sroga doesn't argue that the Illinois law of disorderly conduct is unconstitutionally vague (*Woodard* held it was not).

Sroga cites "Legal Bulletin No. 2001-01," an internal Chicago police memorandum that he claims forbade the police to arrest him for disorderly conduct. The bulletin advises officers that the Illinois courts tend to throw out disorderly-conduct charges when the only complaining witness is a police officer, and therefore "it is important to have a civilian complainant, or at the very least, for the officer to include in the complaint civilian witnesses that could provide corroborative evidence of the offender's conduct." Sroga overreads the bulletin. It doesn't forbid arrest for disorderly conduct without a complaint or evidence from witnesses, and anyway the facts of the incident for which he was arrested are undisputed.

Even if the bulletin were a statute that forbade arrest for disorderly conduct in any circumstances, this would not help Sroga, as we know from *Virginia v. Moore*, 553 U.S. 164 (2008), anticipated in *Gordon v. Degelmann*, 29 F.3d 295, 301 (7th Cir. 1994). The defendant in *Moore* had been arrested for driving with a suspended license. State law made this not an "arrestable offense," but the Supreme Court held that the arrest, although it violated Virginia law, did not violate the Fourth Amendment. The police had probable cause to believe that Moore

had committed the crime of driving with a suspended license—and it was a crime, though not a crime for which the offender could be arrested rather than just given a summons. The Court explained that the Fourth Amendment requires only that an arrest be reasonable and that "warrantless arrests for crimes committed in the presence of an arresting officer are reasonable under the Constitution," *id*. at l76, even if a state or municipality "chooses to protect privacy beyond the level that the Fourth Amendment requires." *Id*. at 171. As we explained in the *Gordon* case, because the arresting officer in that case "followed the procedures the Constitution prescribes for making arrests, his failure to afford Gordon additional procedures established by state law does not matter—not, at least, to a claim under the fourth amendment." 29 F.3d at 301; see also *Thomas v. City of Peoria*, 580 F.3d 633, 637 (7th Cir. 2009); *Edgerly v. City & County of San Francisco*, 599 F.3d 946, 956 (9th Cir. 2010).

We move on to the arrest for theft of lost or mislaid property, a crime committed by a person who has obtained control over property and knows or should know to whom it belongs, but fails to take reasonable measures to restore it to its owner because he's decided to keep it. 720 ILCS 5/16-2. Sroga certainly knew who owned the Chicago Police Department's ticket book, and he had not tried to return it to the department and seemed intent on keeping it, since it was lying on the dashboard of his vehicle.

Sroga argues that the police should have known there was an innocent explanation for the presence of the

ticket book on his dashboard—he shares the vehicle with his brother, a former police officer. But he has presented no evidence that this is true, much less that the officers were aware of it before they arrested him. See *Jackson v. Parker*, 627 F.3d 634, 638 (7th Cir. 2010). (And what is a *former* police officer doing with the police department's ticket book? Still writing tickets?) Anyway "a person's ability to explain away seemingly damning facts does not negate the existence of probable cause, even though it might provide a good defense should the case go to trial." *Deng v. Sears, Roebuck & Co.*, 552 F.3d 574, 577 (7th Cir. 2009).

As if all this were not enough, in the incidents that resulted in Sroga's first two arrests the police had probable cause to arrest him for an additional crime: "knowingly resist[ing] or obstruct[ing] the performance by one known to the person to be a peace officer . . . of any authorized act within his official capacity." 720 ILCS 5/31-1(a). The existence of probable cause to arrest a suspect for any offense, even one that was not identified by the officers on the scene or in the charging documents, will defeat a Fourth Amendment false-arrest claim. *Devenpeck v. Alford*, 543 U.S. 146, 153-54 (2004); *Pourghoraishi v. Flying J, Inc.*, 449 F.3d 751, 762 (7th Cir. 2006); *Zellner v. Summerlin*, 494 F.3d 344, 369 (2d Cir. 2007). In both incidents Sroga disobeyed police officers' lawful orders that he not impede the towing of his car. E.g., *People v. Sorrels*, 906 N.E.2d 788, 792 (Ill. App. 2009); *In re Jerome S.*, 867 N.E.2d 1206, 1212 (Ill. App. 2007); *People v. Synnott*, 811 N.E.2d 236, 241 (Ill. App. 2004). Although

merely arguing with a police officer does not violate the statute, *People v. Weathington*, 411 N.E.2d 862, 863-64 (Ill. 1980); *People v. Martinez*, 717 N.E.2d 535, 538-39 (Ill. App. 1999). Sroga both times went beyond argument by refusing to desist from behavior that was obstructing the efforts of the police to enable his car to be towed. E.g., *City of Chicago v. Meyer*, 253 N.E.2d 400, 402-03 (Ill. 1969); *People v. Gordon*, 948 N.E.2d 282, 287-88 (Ill. App. 2011); *People v. Ostrowski*, 914 N.E.2d 558, 571-72 (Ill. App. 2009).

Sroga's third arrest, for criminal trespass to "state-supported" land, is the only one whose conformity to the Fourth Amendment might be questioned. Illinois law, so far as concerns that arrest, forbids anyone to enter land "supported in whole or in part with State funds" and "thereby [to] interfere[] with another person's lawful use or enjoyment" of the land, 720 ILCS 5/21-5(a), provided that he has been warned off by "a printed or written notice forbidding such entry . . . [that] has been conspicuously posted or exhibited at the main entrance to such land or the forbidden part thereof." *Id.*, § 5/21-5(b).

This aerial photo shows the scene:



Sroga explains that he walked through the police parking lot because it was the quickest way for him to get from the police station, which is at the southeast corner of Grand Avenue and Central Avenue (at the top of the photo), to a nearby train station to catch a ride home. The parking lot is immediately behind the police station and is accessible by a public sidewalk that runs along the police station's east side (on the right, as one faces the photo). South of its intersection with Grand Avenue, Central Avenue crosses the railroad tracks on a bridge,

and an exit from the police parking lot at the lot's south-west corner, underneath the Central Avenue overpass just before the tracks, brings one to Armitage Avenue; and just to the west, on Armitage, is the train station that Sroga says he was trying to get to. He could have gotten from the police station to the train station by walking west on Grand Avenue after leaving the police station, turning south on Central Avenue, and then taking stairs down to Armitage, without going through the police parking lot, but the route he took was a little shorter and didn't involve stairs.

The mere fact that a piece of land is "supported" by the government doesn't make a person who enters it a tres-passer. Otherwise one couldn't use streets or sidewalks. There has to be something in its appearance or layout (a fence for example), or informative signs, to indicate that the public is barred. All that the signs indicated was that only police cars could park in the lot.

So the police didn't have probable cause to arrest Sroga simply because he took a shortcut through their parking lot. It was Sroga's shenanigans in the lot—his peering into the police cars and his pestering the officer whom he found sitting in her police car—that gave the police probable cause to believe that he was interfering with the lawful use of the land.

True, notice that entry is forbidden is also an element of the offense, and the notice was insufficient. So he could not have been *convicted* of violating the statute. But the issue is probable cause to arrest rather than proof of guilt. And "to form a belief of probable cause, an

arresting officer is not required . . . to act as a judge or jury to determine whether a person's conduct satisfies all of the essential elements of a particular statute." *Stokes v. Board of Education*, 599 F.3d 617, 622-23 (7th Cir. 2010); see also *Gramenos v. Jewel Cos.*, 797 F.2d 432, 438-42 (7th Cir. 1986); *Williams v. Town of Greenburgh*, 535 F.3d 71, 79 (2d Cir. 2008). One of the arresting officers said he thought the sign posted in the parking lot said "Police Parking Only and Police Personnel Only." Another interpreted the actual sign to mean that only police could enter the lot, whether "on foot, on a bike, rollerblades, skate board." These misunderstandings are not so egregious that we can say that the police were unreasonable to think they had probable cause to arrest Sroga. *Blankenhorn v. City of Orange*, 485 F.3d 463, 475 (9th Cir. 2007).

Summary judgment was rightly granted on all three of Sroga's claims—but we have to say that Chicago law enforcement does not emerge from its struggles with Sroga with its escutcheon untarnished.

AFFIRMED.