2025 IL App (1st) 240666-U
No. 1-24-0666

SIXTH DIVISION
December 31, 2025

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

---

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

---

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the Circuit Court |
| | ) | of Cook County, Illinois. |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | No. 15 CR 12710 |
| | ) | |
| KEVIN SROGA, | ) | |
| | ) | The Honorable |
| Defendant-Appellant. | ) | Kenneth J. Wadas, |
| | ) | Judge Presiding. |
| | ) | |

---

JUSTICE PUCINSKI delivered the judgment of the court.
Presiding Justice C.A. Walker and Justice Gamrath concurred in the judgment.

**ORDER**

¶ 1    *Held:* Defendant's conviction for resisting a peace officer is affirmed where (1) the record is insufficient to review his challenge to the charging instrument, and (2) the State presented sufficient evidence to support his conviction.

¶ 2    Following a jury trial, defendant Kevin Sroga was found guilty of one count of misdemeanor resisting a peace officer (720 ILCS 5/31-1(a) (West 2014)) and was sentenced to 364 days' incarceration in the Cook County Department of Corrections (CCDOC), time considered served. On appeal, defendant contends that the trial court erred in denying defendant's pre-trial motion to dismiss the resisting a peace officer count because the charging instrument failed to

allege facts to charge him sufficiently with the offense. In the alternative, defendant contends that the State failed to prove him guilty beyond a reasonable doubt because the evidence did not establish that he physically resisted the officer and that his conduct materially impeded the performance of the officer's duties. For the following reasons, we affirm.

¶ 3                                    I. BACKGROUND

¶ 4        Defendant was charged by information with one count each of unlawful possession of altered, forged, or counterfeited titles and registration (count I) (625 ILCS 5/4-104(a)(3) (West 2014)) and felony resisting a peace officer acting within his official capacity which caused the injury to said peace officer (count II) (720 ILCS 5/31-1(a-7) (West 2014)).[1] The resisting a peace officer charge arose from events on July 24, 2015, where defendant "knowingly resisted the performance of Officer M. Cruz, *16655, one known to defendant to be a peace officer, of any authorized act within his official capacity and was the proximate cause of an injury to said peace officer." The information does detail how defendant resisted Officer Cruz's performance and what authorized act Officer Cruz was performing at the time of the incident.

¶ 5                                  A. Pretrial Motions

¶ 6        Defendant represented himself for much of the pretrial proceedings. He filed a multitude of *pro se* pretrial motions, including multiple motions to dismiss both counts of the charging instrument and a motion requesting a bill of particulars. In one of his *pro se* motions directed at count II, which was filed on January 23, 2019, defendant argued that dismissal was necessary because the charge failed to allege "any facts or circumstances" related to the charge of resisting

---

[1] The information, which was filed on August 10, 2015, states the incorrect statutory subsection for count I, and incorrectly states that count II was also related to the unlawful possession of altered, forged, or counterfeited titles and registration. The description of count II clarifies that the offense regarded the felony version of resisting a peace officer acting within his official capacity.

or obstructing a police officer. Defendant argued that the State merely recited the statutory language, which did not apprise him of the alleged offense, and hindered his ability to prepare a defense. Further, during an August 26, 2022, hearing regarding a motion for substitution of judge for cause, defendant argued, *inter alia*, that count II on the "indictment" was "crossed out and amended," which was "illegal" because "[a]n indictment has to be withdrawn and reissued."

¶ 7     Counsel was appointed on July 21, 2023, for subsequent pretrial proceedings. On January 19, 2024, defense counsel filed an amended motion to dismiss count II of the information, arguing that the information failed to set forth the nature and elements of the offense charged because it only referred to the statutory language for the offense. Defense counsel argued that the charging instrument needed to allege facts describing how defendant resisted the officer, and what authorized act the officer was performing. Counsel concluded that because the information contained "only a bare recitation of the resisting or obstructing statute," dismissal was appropriate. Counsel also noted the scrivener's error regarding the title of the offense in the information.

¶ 8     This matter progressed to a hearing on January 26, 2024, where the State commented that the title of count II and the star number of Officer Cruz had already been amended in the information, and stated that the court's copy should be corrected as well. It also argued that the statutory language is sufficient to form the basis of the charging document in this situation. The court denied defendant's motion to dismiss, finding that the charging instrument was sufficient to advise defendant as to the nature of the charge.

¶ 9     On January 29, 2024, the court amended count II of the information to reflect the correct title, resisting a peace officer causing injury, and Officer Cruz's corrected star number. In so doing, the court referred to the information as the "indictment." The record does not contain the corrected information or any indictment.

¶ 10                                    B. Jury Trial

¶ 11          The State proceeded to a jury trial on count II only. At trial, Chicago police detective Rachel Drizner testified that she was working as a police officer on July 23, 2015, when she received a call regarding a "[s]uspicious auto." Drizner, who wore her uniform, traveled to the 1100 block of North Homan Avenue in Chicago at 8:54 p.m. in a marked police vehicle. When she arrived, residents in the neighborhood directed her toward three parked vehicles: two Ford Crown Victorias and one large GMC "box-truck-type van."

¶ 12          Drizner used her vehicle's computer, and searched that the parked vehicles' registrations and VIN numbers. One of the two black Crown Victoria vehicles, which was parked on Homan, had a registration plate which did not match the vehicle's VIN number, and reflected a status as a "junked" vehicle. Its VIN number separately reflected a status as a "salvaged" vehicle registered to defendant. Drizner explained that a junked vehicle "can no longer be driven, parked, or accessible on public roads due to a safety issue," and may be used for parts. A salvaged vehicle can eventually become recertified to normal registration, which would allow it to be driven again. The other black Crown Victoria did not have any information attached to its VIN number registration, but its associated plate "came back to a different VIN number and a white vehicle." Finally, the GMC box truck did not have any plates, but a temporary registration was in the front dash area. The registration number on the temporary tag reflected a "2003, white Crown Victoria," and the VIN number had no information associated with it. Drizner suspected that the vehicles had "retagged" or "fake" VIN numbers, which required further investigation.

¶ 13          Drizner then called her sergeant to authorize a confidential VIN tow, which is required for an investigation by the Illinois State Police regarding the identity of the vehicles. When Drizner was in her vehicle reviewing information on her computer, she saw defendant, whom she identified

in court, in her rearview window standing two to three "car lengths" away from her vehicle. Drizner then "called for an assist vehicle" because she was by herself and defendant was a much larger person than she was. She waited in her vehicle and saw that defendant entered the box truck with keys in his hand and closed the door.

¶ 14  Four other officers soon arrived, two in a marked vehicle and two in plain clothes, including Officer Cruz. Drizner exited her vehicle, approached the box truck, and ordered defendant "out of the vehicle *** [m]ore than five" times. Drizner testified that defendant could not sit in a vehicle that was under investigation and going to be towed but also testified that she did not tell him why she wanted him to exit the vehicle. According to Drizner, defendant was not being arrested yet. Defendant refused to exit the box truck. Cruz also ordered defendant to exit the vehicle several times. The incident had elapsed for several minutes. Defendant continued to refuse to exit and eventually asked for a supervisor, whom Drizner called. Sergeant Wasielewski responded to the scene in under ten minutes, and he also ordered defendant to exit the truck several times. Defendant continued to refuse. Cruz ultimately broke defendant's window with a baton, and defendant was removed from the vehicle and placed under arrest. Drizner waited on scene for the vehicles to be towed, noting that the box truck needed a specialized vehicle to tow it.

¶ 15  On cross-examination, Drizner stated that she had been named in a lawsuit that defendant filed against the Chicago Police Department regarding the incident. At the time of the incident, Drizner did not know whether the truck had been stolen. Drizner denied that defendant exited the vehicle after the window was broken, and stated that defendant "was removed from the vehicle," not "on his own accord." Defendant was "passively resisting" the order to exit the vehicle, so his removal was "required." The officers used a "control technique with the wrist" to remove him

from the vehicle. On redirect examination, Drizner stated that the box truck's registration was expired.

¶ 16    Cruz testified that on July 23, 2015, he went to the 1100 block of North Homan Avenue dressed in plain clothes with a bulletproof vest, duty belt, and visible badge.[2] Cruz approached defendant, who was sitting in a box truck at the scene. Cruz attempted to open both the driver's and passenger's side doors of the truck, but both were locked. Then, Cruz "ordered" defendant to open the door. Cruz did not recall whether he informed defendant that he was a police officer, but he wore his badge. Defendant did not comply but asked Cruz for "a supervisor." After the supervisor arrived, Cruz attempted to break the driver's side window "to be able to extract [defendant] from the vehicle." After a few attempts, Cruz broke the window by using his expandable metal baton. When Cruz shattered the window, his hand entered the window due to the force and momentum of the hit, which caused five lacerations on his right hand and "a couple" cuts on his arm. After Cruz broke the window, the supervisor "was able to open the door of the vehicle to grab [defendant] and place him into custody."

¶ 17    After defendant was removed from the vehicle, Cruz received medical treatment for the injuries on his hand, where a doctor cleaned the lacerations and treated them with an ointment. The State presented photographs of Cruz and his hand as they looked after he left the hospital, which are in the record on appeal and have been viewed by this court. The photographs depict Cruz dressed in a blue t-shirt and jeans with a bulletproof vest and duty belt, and a close up of the top of his right hand which has bleeding lacerations.

---

[2] Cruz testified that at the time of the trial, he was a sergeant with the police department at the University of Wisconsin in Madison, Wisconsin.

¶ 18    On cross-examination, Cruz stated that his vehicle was unmarked with no Chicago Police Department insignia on it. Cruz did not recall whether the windows of the truck were tinted or whether he identified himself as a police officer. When Cruz first approached defendant, three officers were on scene, including Cruz. After Wasielewski arrived and told defendant to exit the vehicle, defendant requested a lieutenant. Cruz did not believe anyone called a lieutenant. When Cruz broke the window, shards of glass remained inside the window frame. Cruz denied that defendant exited the vehicle on his own after Wasielewski unlocked the door, and stated that defendant "was escorted out of the vehicle" by the officers who grabbed his arms.

¶ 19    Defense counsel confronted Cruz with his testimony from an August 5, 2015, preliminary hearing wherein Cruz testified that he did not recall at what time defendant resisted during the arrest. On redirect examination, Cruz testified that his testimony in the preliminary hearing also established that defendant resisted by refusing to comply with Cruz's request to exit the vehicle. Cruz testified that the incident was "so long ago," so he no longer recalled the specifics.

¶ 20    Chicago police lieutenant Carl Wasielewski testified that he had the rank of sergeant on July 23, 2015. In that capacity, he supervised other officers, among other duties. On that day, Wasielewski traveled to the 1100 block of North Homan Avenue and spoke with Drizner as well as with other members of the community before leaving the scene. Wasielewski then returned to the same location a second time that day because an officer requested a supervisor. He arrived at the scene in a marked squad vehicle and was dressed in his uniform and bulletproof vest.

¶ 21    After speaking with Drizner a second time, Wasielewski approached a truck with defendant sitting in the driver's seat. Wasielewski informed defendant that he needed to exit the vehicle because "he was under investigation for a crime," and if he did not exit the vehicle, he would be arrested. Defendant "listened, but he did not comply," and argued when Wasielewski told him to

exit the vehicle "numerous" times. Eventually, Wasielewski used aggressive language, including expletives, and defendant informed him that he would not comply with any order. Wasielewski then informed defendant that he would have to break the window. Wasielewski first attempted to break the passenger's side window but was unsuccessful. He then ordered Cruz to break the driver's side window, and Cruz successfully did so. Cruz was not injured before he broke the window. Wasielewski moved to the driver's side to assist the other officers in removing defendant from the vehicle. After the officers "had hands on" defendant, defendant began to comply.

¶ 22    On cross-examination, Wasielewski stated that he was unsure whether Cruz injured his hand by reaching into the window. Defense counsel confronted Wasielewski with his testimony at a prior hearing where he testified that Cruz injured his arm by reaching into defendant's window. Wasielewski denied asking defendant "[a]re you going to get out, now, or am I going to have to tase you?" Wasielewski stated that defendant eventually verbally complied, but did not recall if defendant exited the vehicle himself, because the officers' "hands [were] on him at the exact same time." Defense counsel also confronted Wasielewski with his testimony from the preliminary hearing where he testified that "after the window was broken, the defendant said, [a]ll right, all right, and exited the vehicle." Defendant was then searched and handcuffed, but Wasielewski was unsure in which order the events took place. Defendant named Wasielewski in a lawsuit concerning this incident.

¶ 23    Chicago police detective David Healey testified that he responded to the scene and saw the GMC box truck parked on the street with a shattered front driver's side window. Healey investigated the temporary registration permit in the truck, and it was linked to a 2003 Ford Crown Victoria registered to defendant. After interviewing other officers, Healey traveled to the hospital to interview defendant. When Healey arrived, defendant asked his name and informed him that he

would "be in the lawsuit also." Healey introduced himself and Mirandized defendant. Healey asked defendant why he did not exit the vehicle when asked and defendant stated that he did not have to because "it was his Fourth Amendment right." He also informed Healey that "this city pays out more in federal lawsuits than any other city." Defendant told Healey that he had been sitting in the vehicle for approximately 25 minutes before the police arrived.

¶ 24    Defendant testified that in 2015, he supported himself by buying and selling used vehicles, which he purchased from government agencies. He owned a box truck which he purchased from the State of Illinois, and testified that the VIN number's registration lapsed due to a lengthy wait for auction. He owned a vacant lot on North Homan Avenue which he used to store vehicles.

¶ 25    In the afternoon on July 23, 2015, defendant moved vehicles off the lot in order to clean it. At 10 p.m. that night, defendant was driving a Ford cargo van when he saw a marked squad vehicle with its lights activated blocking a lane of traffic on the 1100 block of Homan Avenue. He parked the van and passed the squad vehicle multiple times on foot without addressing the officer inside. Then, defendant entered his box truck and listened to the radio for 15 to 25 minutes. He saw a flatbed tow truck with the squad vehicle and the driver was speaking with the police officer. The tow truck drove away, and eventually Drizner approached defendant and told him to get out of the vehicle. Defendant asked her why, and she responded that she was "giving [him] a lawful order to get out of the truck." Drizner did not tell him the basis for the order and did not say that he was under arrest. Defendant asked to speak with a supervisor and other officers in uniform arrived. The other officers also tried to open defendant's door and asked defendant to exit the vehicle, and one attempted to break the glass of the vehicle. Defendant told them to "[h]old on," because a supervisor was coming.

¶ 26    When Wasielewski arrived, he yelled "an expletive" at defendant to "get the F out of the truck," and began banging on the driver's side window while "yelling and screaming at the top of his lungs to get the F out." Defendant asked Wasielewski "why" but he never responded, so defendant requested a lieutenant "[a]t least half a dozen times," because Wasielewski was "acting irrational." Wasielewski then attempted to break the windows on both the driver's and passenger's sides but was unsuccessful. Wasielewski stood at defendant's passenger side window when the driver's side window shattered, and Cruz stuck his hand through the window to unlock the door. The windows were tinted, and the tint held the glass together, so "95 percent of the window" was still in the frame when Cruz put his hand through the window. Cruz pulled his hand out while yelling "ow," and Wasielewski then cleaned the glass around the window frame with his baton and opened the door.

¶ 27    Wasielewski informed defendant that he was under arrest, and asked him "[a]re you going to get out, or are we going to have to tase you?" Defendant then exited the vehicle "without incident" and no police officer "had to touch [him] at all." The officer then searched defendant and placed him in handcuffs, and did not attempt to flee or pull away from the officers on scene. Defendant was injured by the broken glass and has filed a lawsuit against the Chicago Police Department. Defendant eventually received his box truck after the incident "[f]ree of charge."

¶ 28    On cross-examination, defendant stated that the vehicles he owns have regular titles, not junk titles. In order to relocate the vehicles to clean the lot, defendant towed them using a tow dolly attached to his van. Defendant stated that the vehicles were in drivable condition, but he elected to tow them instead. He explained that one of the Crown Victorias he purchased had an erroneous "salvaged" title rather than a regular title. Defendant sat in the box truck listening to music in part because he wanted to see why the police vehicle was "blocking" traffic, noting that

he had "never seen anything like this." Defendant acknowledged that the police investigating his vehicles was a "possibility" and wanted to ensure that his vehicles would not be towed "for the most part."

¶ 29    Drizner approached defendant after one of the Crown Victoria vehicles had been placed onto the back of the tow truck, and she "was pointing at the box truck next." The tow truck driver stated that defendant was inside, and Drizner then approached the truck. Defendant acknowledged that the City of Chicago is not allowed to tow a truck with a person sitting inside according to "a City of Chicago municipal ordinance" and he locked the doors of the box truck as a "habit." Defendant denied knowing that Cruz was a police officer because he was dressed in civilian clothes with no badge, and he could not tell that Cruz was with other police officers due, in part, to the late hour and the fact that he could not see through the tinted windows. Defendant also acknowledged that he could have opened the door but was not "going to concede to their intimidation of acting like a*** that night." The officers unlocked the driver's side door themselves after breaking the window.

¶ 30    Over defense counsel's objection, the court additionally instructed the jury on the lesser-included offense of resisting the performance of a peace officer acting within his official capacity. The jury found defendant guilty of the lesser-included offense of misdemeanor resisting a peace officer.

¶ 31    Defense counsel filed a motion and amended motion for a judgment of acquittal notwithstanding the verdict and in the alternative for a new trial arguing, in relevant part, that the trial court erred when it denied the pretrial motion to dismiss count II, and the State presented insufficient evidence that defendant knowingly resisted an authorized act by Cruz. The court

denied the motion. After a hearing, defendant was sentenced to 364 days' incarceration in the CCDOC.

¶ 32                                          II. ANALYSIS

¶ 33          On appeal, defendant first argues that the trial court erred in denying his motion to dismiss count II because the information failed to state the elements of the offense with particularity. Defendant contends that a charging instrument for resisting or obstructing a police officer must specify the acts alleged to have obstructed the officer and the authorized act the officer was performing. Because count II of the information merely tracked the statutory language and did not include these details, defendant contends that reversal is mandated.

¶ 34          In its response brief, the State notes that the information at issue was superseded by an indictment on August 10, 2015, and the record references multiple amendments to the indictment. It also comments that the final amended indictment is not in the record on appeal.

¶ 35                          A. Incompleteness of the Record on Appeal

¶ 36          Defendant, as the appellant, has the burden to provide a sufficiently complete record to support a claim of error. *Webster v. Hartman*, 195 Ill. 2d 426, 432 (2001); see Ill. S. Ct. R. 321 (eff. Oct. 1, 2021); R. 323 (eff. July 1, 2017). Absent such a record, we must presume the trial court acted in conformity with the law and with a sufficient factual basis for its findings. *Foutch v. O'Bryant*, 99 Ill. 2d 389, 391-92 (1984). Any doubts which may arise from the incompleteness of the record will, therefore, be resolved against the appellant. *Id.* at 392.

¶ 37          Here, as noted, the charging instrument was referred to both as an information and as an indictment throughout the record on appeal. The record contains no indictment. Nor does it contain an amended information. Consequently, we cannot determine what details the final charging instrument contained in order to analyze the issue. Due to the inadequate record, we must presume

that the trial court acted in conformity with the law and with a sufficient factual basis for its findings. See *Foutch*, 99 Ill. 2d at 391-92.

¶ 38                                B. Sufficiency of the Evidence

¶ 39        In the alternative, defendant argues that the State failed to prove him guilty beyond a reasonable doubt because the evidence did not establish that he physically resisted Cruz or materially impeded Cruz or any other officer in the performance of their duties. Defendant contends that the evidence, instead, merely showed that defendant argued with the officers and refused to exit the vehicle, which does not meet the definition of a physical act of resistance. Defendant argues that his actions were reasonable given the aggression and uncommunicativeness of the officers about their reasons for why he should exit his vehicle. He contends that his actions did not impede the officers, as Drizner's investigation had been mostly completed by the time defendant refused to exit the vehicle, and she had to wait for the vehicles to be towed after defendant's arrest.

¶ 40        The standard of review for a challenge to the sufficiency of the evidence is "whether, viewing the evidence in the light most favorable to the State, 'any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " *People v. Belknap*, 2014 IL 117094, ¶ 67 (quoting *People v. Collins*, 106 Ill. 2d 237, 261 (1985)). This standard applies whether the evidence is direct or circumstantial. *People v. Wheeler*, 226 Ill. 2d 92, 114 (2007). The trier of fact, here the jury, is responsible for resolving conflicts in the testimony, weighing the evidence, and drawing reasonable inferences from basic facts to ultimate facts. *People v. Brown*, 2013 IL 114196, ¶ 48. The reviewing court must allow all reasonable inferences from the record in favor of the prosecution (*People v. Cunningham*, 212 Ill. 2d 274, 280 (2004)) and will not

reverse a conviction unless the evidence is "unreasonable, improbable, or so unsatisfactory as to justify a reasonable doubt of the defendant's guilt" (*People v. Jackson*, 232 Ill. 2d 246, 281 (2009)).

¶ 41    Defendant was found guilty of misdemeanor resisting a peace officer. A person commits resisting or obstructing a peace officer where he or she knowingly "resists arrest" or "obstructs the performance by one known to be a peace officer *** of any authorized act within his or her official capacity." 720 ILCS 5/31-1(a) (West 2014). "[T]he State must prove that the defendant resisted or obstructed someone he knew was a peace officer and that this obstruction or resistance actually impeded or hindered the officer from conducting an act that he or she was authorized to perform." *People v. Sadder-Bey*, 2023 IL App (1st) 190027, ¶ 26; see also *People v. Baskerville*, 2012 IL 111056, ¶ 23 (analyzing obstruction of a peace officer). Here, defendant does not challenge that he knew that Cruz was a peace officer or that Cruz was performing an authorized act within his official capacity, but rather that he knowingly resisted Cruz and such resistance materially impeded Cruz or any other officer from conducting an act that he or she was authorized to perform.

¶ 42    Our supreme court has interpreted the term "resist" to imply "some type of physical exertion in relation to the officer's actions." *Baskerville*, 2012 IL 111056, ¶ 25. A defendant's mere argument with police officers is insufficient to support a conviction for resisting a peace officer. *People v. Berardi*, 407 Ill. App. 3d 575, 583 (2011). A defendant must commit a "physical action which imposes an obstacle which may impede, hinder, interrupt, prevent or delay the performance of the officer's duties, such as going limp, forcefully resisting an arrest or physically aiding a third party to avoid arrest." (Internal citation omitted.) *Sadder-Bey*, 2023 IL App (1st) 190027, ¶ 41. Passive acts which hinder an officer's ability to perform his duties, "such as repeatedly refusing an order to exit a vehicle" may satisfy the statutory definition of resistance. *People v. Kotlinski*, 2011 IL App (2d) 101251, ¶ 47; see *People v. Synnott*, 349 Ill. App. 3d 223,

228-29 (2004) (finding evidence that the defendant repeatedly disobeying an officer's order to exit a vehicle was sufficient to sustain a conviction for obstruction of a peace officer).

¶ 43　　　　Additionally, the defendant must resist the peace officer knowingly. A person acts knowingly where he is "consciously aware" of the nature of his conduct and that his conduct is practically certain to cause a particular result. 720 ILCS 5/4-5(a), (b) (West 2014). Knowledge is generally established by circumstantial evidence rather than by direct proof. *People v. Castillo*, 2018 IL App (1st) 153147, ¶ 26. A defendant "need not admit knowledge for the trier of fact to conclude that he acted knowingly." *People v. Penning*, 2021 IL App (3d) 190366, ¶ 28. Knowing obstruction of a peace officer has been found where the defendant's act of entering a vehicle about to be towed and disobeying police officers' orders to exit went "beyond argument" and obstructed the officers' efforts to tow his vehicle. *Sroga v. Weiglen*, 649 F. 3d 604, 608 (7th Cir. 2011).

¶ 44　　　　To sustain a conviction for resistance of a peace officer, the State must also prove that the resistance materially hindered the officer from his or her performance of the authorized act. *Sadder-Bey*, 2023 IL App (1st) 190027, ¶¶ 26; 34-39 (reading a materiality requirement into the offense of resisting a peace officer where other cases considered materiality in the context of obstruction). When evaluating this element, we consider "(1) the length of the delay caused by the act, which is a 'primary factor'; (2) whether the officers initiating the traffic stop were familiar with the defendant; and (3) whether the act tends to pose a risk to officer safety." *People v. Coates*, 2025 IL App (4th) 231312, ¶ 41 (in the context of obstruction of a peace officer). This inquiry is fact intensive. *Id* ¶¶ 42-45 (finding a material hindrance where the defendant refused to produce his identification for five minutes during a traffic stop, and eventually needed to be removed from the vehicle); see also *Sadder-Bey*, 2023 IL App (1st) 190027, ¶ 49 (no criminal resistance where the defendant argued with police officers for less than two minutes before cooperating); *People v.*

*Mehta*, 2020 IL App (3d) 180020, ¶ 35 (the delay caused by the defendant was "relatively small" as it was less than three minutes, but it occurred during a "high-tension situation for the police" with a suspicion that the defendant carried a firearm).

¶ 45        Viewing the evidence in the light most favorable to the State, a rational trier of fact could find that the State proved defendant guilty of resisting a peace officer beyond a reasonable doubt. The State presented Drizner's testimony, which established that she received authorization for a confidential VIN tow relating to the three vehicles which displayed conflicting registration information. During this time, she saw defendant enter the box truck and called for backup. The State presented evidence that Officers Drizner and Cruz both ordered defendant to get out of the locked vehicle, to which defendant requested a "supervisor." Sergeant Wasielewski responded to the scene and informed defendant that he needed to exit the vehicle because he was under investigation for a crime. Defendant still refused to exit the vehicle and requested a lieutenant. Cruz then shattered defendant's driver's side window and unlocked the door. Defendant only began to comply with the officers after they "used a control technique" to remove him from the vehicle. Although no testimony was adduced regarding the entire length of the incident, Drizner testified that she and Cruz argued with defendant for "several" minutes before he asked for a supervisor, and Wasielewski arrived in under ten minutes and argued with defendant multiple times before Cruz broke the window to extract defendant. These events are sufficient to establish that defendant knowingly resisted the officers' actions, and his resistance materially hindered the officers from their performance of an authorized act. See 720 ILCS 5/31-1(a) (West 2014).

¶ 46        Defendant nevertheless contends that, first, the evidence only established that he argued with officers and refused to exit the vehicle, which is not legally sufficient to establish that he resisted the officers. He argues that none of the officers told him why he needed to exit the vehicle

and noted that "after Wasielewski opened the door," the officers removed defendant from the vehicle and arrested him with no "challenge." However, as the trial evidence established, defendant did not simply argue with the officers, but locked himself inside the box truck and refused to comply with their orders to exit the truck. During cross-examination, defendant acknowledged that he understood the officers could not tow the truck if he was inside it, and wanted to ensure that his vehicles would not be towed "for the most part." Defendant, therefore, was consciously aware that his actions would prevent the officers from being able to tow the box truck. 720 ILCS 5/4-5(a), (b) (West 2014). In fact, a very reasonable inference is that defendant locked himself inside the box truck for the express purpose of stopping the officers from towing it. These actions clearly fall under the definition of knowing resistance of a peace officer's authorized act. See *Sroga*, 649 F. 3d at 608.

¶ 47    Further, the officers needed to break his window in order to extract him from the truck. Although defendant testified that he did not need to be removed from the vehicle, the court was under no obligation to accept defendant's version of events. See *People v. Grunin*, 2022 IL App (1st) 200598, ¶ 59 ("When faced with conflicting versions of events, a factfinder is 'entitled' to choose among them and is not obligated to accept the defendant's version."). Defendant's removal from the truck, as opposed to exiting the truck on his own power, is analogous to his "going limp" as a form of resistance. See *Sadder-Bey*, 2023 IL App (1st) 190027, ¶ 41. We find the evidence sufficient to establish that defendant knowingly resisted the officers.

¶ 48    Defendant further contends that his refusal to exit the box truck did not materially hinder the officers' performance because defendant's "minimal amount of antagonism" did not impede the investigation where Drizner already investigated the registration of the vehicles and was still waiting for a specialized tow truck and defendant's cooperation would only corroborate the

information she had already discovered. Defendant also notes that his actions in refusing to exit the truck could be seen as reasonable because he was surrounded by officers and Wasielewski arrived at the scene "screaming expletives" and attempting to break the windows.

¶ 49    Again, we note that defendant and Wasielewski testified to different versions of the events, where Wasielewski testified that he asked defendant several times to exit the vehicle because "he was under investigation for a crime," and would be arrested if he did not exit the vehicle, and defendant testified that Wasielewski screamed expletives at him and banged on his windows upon arrival. As established, a factfinder is not obligated to accept defendant's version of events. See *Grunin*, 2022 IL App (1st) 200598, ¶ 59. Here, defendant needed to be forcibly removed from the vehicle after many minutes of refusing to cooperate with the officers. As established, defendant's actions amounted to more than just a few minutes of arguing with the officers before eventually cooperating. See *Sadder-Bey*, 2023 IL App (1st) 190027, ¶ 49.

¶ 50    Additionally, defendant's continued refusal to comply with the officers' orders constituted a potential threat to officer safety, given his belligerence and expression that he would not comply with their orders. While antagonism is not enough under the statute, defendant's refusal to exit the locked box truck, which had tinted windows, could have threatened the officers' safety. See *People v. Mehta*, 2020 IL App (3d) 180020, ¶ 34 (noting that" a suspect's refusal to make his hands visible or exit his vehicle create patent officer safety concerns"). As Drizner testified, she did not know whether the vehicles were stolen. Defendant also testified that he could not see out his tinted windows to verify that Cruz was a police officer. His behavior in locking himself inside a truck with darkened windows, while behaving aggressively toward the officers, elevated the officers' safety concerns in this scenario. See *id*. ¶ 35. Thus, a rational trier of fact could find beyond a

reasonable doubt that defendant's conduct created a material hindrance to the officers' investigation.

¶ 51     In sum, as the evidence is not so "unreasonable, improbable, or so unsatisfactory as to justify a reasonable doubt of the defendant's guilt," we affirm defendant's conviction for misdemeanor resisting a peace officer. See *Jackson*, 232 Ill. 2d at 281.

¶ 52                                   III. CONCLUSION

¶ 53     For the foregoing reasons, we affirm the judgment of the circuit court.

¶ 54     Affirmed.